**Brian Dennis HUNT, Plaintiff,**

v.

**NUCLEAR REGULATORY COMMISSION, an Agency of the United States, and Sheldon Wolfe, M. Frederick Shon, and Dr. Paul W. Purdom, Individually and as members of the Atomic Safety and Licensing Board of the Nuclear Regulatory Commission, Defendants,**

**General Electric Company, a New York Corporation, Intervening Defendant,**

**Public Service Company of Oklahoma, Intervening Defendant.**

**No. 79-C-122-C.**

United States District Court, N. D. Oklahoma.

April 19, 1979.

Lewis Pitts, James N. Khourie, Tulsa, Okl., Kenneth W. East, Pub. Service Co., Tulsa, Okl., Joseph Gallo (PSO), Isham, Lincoln & Beale, Washington, D. C., Glenn E. Nelson (PSO), Isham, Lincoln & Beale, Chicago, Ill., for plaintiff.

Stephen S. Ostrach (NRC), USNRC, Washington, D. C., J. Kenton Francy (Gen. Elec.), F. Paul Thieman, Jr., Crowe & Thieman, Tulsa, Okl. and George L. Edgar (Gen. Elec.), Kevin P. Gallen, James Skelly Wright, Jr., Morgan, Lewis & Bockius, Washington, D. C., for defendants.

## ORDER

COOK, Chief Judge.

The above-captioned action is brought pursuant to the provisions of the Government in the Sunshine Act (Sunshine Act), 5 U.S.C. § 552b. The plaintiff alleges that certain *in camera* hearing sessions in the construction permit adjudicatory proceedings for the Black Fox nuclear power station should have been opened to the public under the Sunshine Act. He prays that the Court issue preliminary and permanent injunctions prohibiting the defendant Nuclear Regulatory Commission's (NRC) Atomic Safety and Licensing Board (ASLB) from conducting the subject hearing sessions *in camera*, and for such further relief as the Court may deem proper. The defendant NRC has moved the Court to dismiss plaintiff's Complaint. The intervenors, General Electric Company (GE) and Public Service Company of Oklahoma (PSO), support the NRC's Motion to Dismiss.

The *in camera* hearing sessions objected to by the plaintiff had as their subject matter the so-called "Reed Report". The Reed Report is a study on the subject of

GE's Boiling Water Reactor Nuclear Steam Supply System which was prepared under the direction and supervision of Dr. Charles Reed, a GE employee, in 1975. GE's Nuclear Steam Supply System is to be a component of PSO's Black Fox nuclear power plant located near Inola, Oklahoma.

Over the past several months, the ASLB has conducted hearings with respect to the licensing of the Black Fox plant. On October 18, 1978, at the request of the intervenor in the Black Fox proceedings, Citizens' Action for Safe Energy, the ASLB issued a subpoena duces tecum to GE requesting production of the Reed Report. The Reed Report was eventually made available for certain limited purposes and subject to a protective order. Each of the parties in the Black Fox proceedings subsequently executed an "Agreement Regarding Disclosure of Confidential Information" where they agreed, among other things, that the information from the Reed Report would be presented only during *in camera* sessions before the ASLB. These *in camera* sessions were scheduled for March 1–3, 1979. The Black Fox licensing proceedings, including the *in camera* hearings on the Reed Report, were concluded on February 28, 1979.

*Mootness*

On February 22, 1979, the Court heard and denied plaintiff's application for a temporary restraining order prohibiting the *in camera* hearings on the Reed Report. At the conclusion of that hearing, it became apparent that the crux of this matter was whether the Sunshine Act applied to the Black Fox hearings. This is the principal ground raised by the NRC in its Motion to Dismiss. The Court indicated that if the Sunshine Act were applicable, the plaintiff would be entitled to relief. The case was submitted to the Court on the merits of that issue.

However, upon reviewing the Complaint, the Court became concerned that the conclusion of the hearings had rendered this case moot. The plaintiff is asking that the Court enjoin proceedings that have been concluded. This concern was expressed to the parties. The defendants contend that this case is moot. The plaintiff, of course disagrees. On the other hand, all the parties also seem to desire a disposition of this case on its merits.

This case presents matters which are of great public interest and importance. The proliferation of nuclear power is inevitable, as is the public debate over its safety and feasibility. As in the instant case, the public will certainly continue to demand access to the decision-making process. Under these circumstances, a decision on the merits is not only desirable, but it is also entirely proper.

The cessation of allegedly illegal acts may determine the appropriateness of injunctive relief from those acts, but it will not make the case moot. *See United States v. W. T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

> "A controversy may remain to be settled in such circumstances, . . . *e. g.,* a dispute over the legality of the challenged practices. . . . The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion. . . ." (Footnotes and citations omitted) *Id.* at p. 632, 73 S.Ct. at p. 897. *See also Allee v. Medrano,* 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 612 (1974).

Facts such as those of the case at bar which are " 'capable of repetition, yet evading review' ", *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973), justify a conclusion of nonmootness.

The legality of the ASLB's *in camera* sessions remains a live issue. As the Court has indicated, if the Sunshine Act applies, the holding of *in camera* hearings on the Reed Report was illegal and the plaintiff is entitled to relief. The Sunshine Act would not limit the plaintiff to the now inappropriate injunctive relief. The Court may grant "such equitable relief as it deems appropriate, including . . . ordering the agency to make available to the public such portion of the transcript, recording, or minutes of a meeting as is not authorized to

be withheld . . ." 5 U.S.C. § 552b(h)(1).

The Court's conclusion that the cessation of the subject hearings does not moot this case is reinforced by the provisions of the Sunshine Act. Section 552b(h)(1) allows the bringing of an action to enforce the open meeting provisions up to sixty days *after* the meeting out of which the alleged violation arose.

### The Merits

The Sunshine Act requires that "[m]embers shall not jointly conduct or dispose of agency business other than in accordance with this section. . . . [E]very portion of every meeting of an agency shall be open to public observation." 5 U.S.C. § 552b(b). The terms "agency", "meeting", and "member" are limited in meaning.

"For purposes of this section—

(1) the term 'agency' means any agency, as defined in section 552(e) of this title, headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate, and any subdivision thereof authorized to act on behalf of the agency;

(2) the term 'meeting' means the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business, but does not include deliberations required or permitted by subsection (d) or (e); and

(3) the term 'member' means an individual who belongs to a collegial body heading an agency." 5 U.S.C. § 552b(a).

It is clear that the Sunshine Act applies to the deliberations of the collegial body heading the agency, in this case, the NRC. But the term "agency" also refers to "any subdivision thereof authorized to act on behalf of the agency." An ASLB is authorized to act on behalf of the NRC under certain circumstances. 10 C.F.R. §§ 1.11, 2.721. However, there are no agency "members" on an ASLB. 42 U.S.C. § 2241(b). The Sunshine Act and its legislative history demonstrate that a board or panel without "members" is not a "subdivision" of an agency under the Sunshine Act.

If such boards or panels were meant to be covered, the "meeting" requirement would have to be ignored. The Sunshine Act requires that "meetings" be open to the public and meetings are deliberations of members.

The House Report on the Sunshine Act explains the "subdivision" language as follows:

"The term 'agency' includes . . . (2) any subdivision thereof authorized to act on behalf of the agency (*without regard to the number of members composing or included in the subdivision*) . .

A subdivision of an agency covered under section 552b is covered if it is authorized to act on behalf of the agency. Panels, or regional boards of an agency are covered if authorized to act on behalf of the agency, even if their action is not final in nature. Thus, panels or boards authorized to submit recommendations, preliminary decisions or the like to the *full commission,* or to conduct hearings on behalf of the agency are required to comply with the provisions of section 552b." (Emphasis added) 1976 U.S.Code Cong. & Admin.News, pp. 2183, 2189.

The House of Representatives apparently contemplated that some number of members less than the "full commission" would be included in the agency subdivisions covered by the Sunshine Act.

The Senate Report is more explicit.

"Section 201(a) provides that all meetings of the individual Commissioners, board members, or the like, except those discussions exempted by subsection (b), must be open to the public. Included within this requirement are meetings of agency subdivisions authorized to take action on behalf of the agency. The open meeting requirement applies to panels of a Commission, or regional boards, consisting of

two or more agency heads and authorized to take action on behalf of the agency. To be a subdivision of an agency covered by this subsection, the panel need not have authority to take agency action which is final in nature. Panels or boards composed of two or more agency members and authorized to submit recommendations, preliminary decisions, or the like to the full commission, or to conduct hearings on behalf of the agency, are required by the subsection to open their meetings to the public." S.Rep. No. 94–354, 94th Cong., 1st Sess. 17 (1975).

The location of the word "subdivision" was different in the House and Senate versions of the Sunshine Act. *See* H.Rep. No. 94–880, Part I, 94th Cong., 2nd Sess. 25 (1976); S.Rep. No. 94–354, 94th Cong., 1st Sess. 56 (1975). The Senate version read in pertinent part as follows:

"Except as provided in subsection (b), all meetings of such collegial body, or of a subdivision thereof authorized to take action on behalf of the agency, shall be open to the public. . . ."

The pertinent House amendments were adopted by the committee of conference on the disagreeing votes of the two Houses and were eventually signed into law. There the word "subdivision" is contained in the definition of agency. It is clear from the Conference Report that the adoption of the House Amendments was not meant to effect any substantive change in the law. 1976 U.S.Code Cong. & Admin.News, pp. 2183, 2246–47.

■ The Court must therefore conclude that the Sunshine Act did not apply to the ASLB Black Fox hearings. The Court is aware of only one prior instance where a court has had occasion to interpret the subject provisions of the Sunshine Act. Judge Fullam of the United States District Court for the Eastern District of Pennsylvania issued a bench opinion in *Philadelphia Newspapers, Inc. v. U. S. Parole Comm'n,* No. 78–1016 (E.D.Pa. Mar. 30, 1978), in which he held that proceedings before hearing examiners who were not members of the Parole Commission were not subject to

the provisions of the Sunshine Act. Judge Fullam reasoned as follows:

"The Sunshine Act obviously would apply to the meetings of the Parole Commission itself and very clearly, to my mind, does not apply to proceedings before persons who are not members of the Parole Commission and whose decisions or deliberations do not result in action by the Parole Commission.

Specifically Section 552b, Subsection (a)(2) says: '. . . the term "meeting" means the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business. . . .'

Subsection (3) of that section says: '. . . the term "member" means an individual who belongs to a collegial body heading an agency.'

Therefore, it is clear to me the proceedings before a hearing examiner or hearing examiners who are not members of the Parole Commission can not possibly constitute a meeting within that terminology.

This is fortified by the observation of Subsection (b) of Section 552b that specifically says only that 'members shall not jointly conduct or dispose of agency business other than in accordance with this section.' I need not explore the question of the possible right of a covered agency to determine that opening the meeting would not be appropriate.

Therefore, I conclude that plaintiffs do not have any basis for proceeding under the Sunshine law." *Id.* at pp. 3, 4.

The plaintiff has submitted a partial transcript of a hearing before the Nuclear Regulatory Commission's Advisory Committee on Reactor Safeguards (ACRS), which hearing was opened to the public pursuant to the provisions of the Federal Advisory Committee Act and the Sunshine Act. The plaintiff contends that this material demonstrates the inconsistency of the NRC's position that the Black Fox hearings are not

subject to the provisions of the Sunshine Act, since the ACRS and an ASLB occupy similar positions in the NRC organization. This contention lacks merit.

 The ACRS is an "advisory committee" subject to the provisions of the Federal Advisory Committee Act, 5 U.S.C., App. I §§ 1–15. Section 10 of that Act requires that advisory committee meetings be open to the public, 5 U.S.C., App. I § 10(a)(1), and the provisions of the Sunshine Act for closing meetings are expressly made applicable to meetings of advisory committees. 5 U.S.C., App. I § 10(d). This accounts for the committee's announcement that the meeting was being conducted in accordance with the provisions of the Federal Advisory Committee Act and the Sunshine Act. It does not appear to the Court that an ASLB is an "advisory committee" within the contemplation of the Act. 5 U.S.C., App. I §§ 3, 9. *See Union of Concerned Scientists v. Atomic Energy Comm'n,* 499 F.2d 1069 (D.C.Cir.1974).

For the foregoing reasons, it is therefore ordered that the defendant NRC's Motion to Dismiss is hereby sustained.