**Brian Dennis HUNT, Plaintiff-Appellant,**

v.

**NUCLEAR REGULATORY COMMISSION et al., Defendants-Appellees.**

**No. 79–1647.**

United States Court of Appeals, Tenth Circuit.

Argued Nov. 6, 1979.

Decided Nov. 23, 1979.

Certiorari Denied Feb. 25, 1980.

See 100 S.Ct. 1084.

Robert M. Hager, Tulsa, Okl., for plaintiff-appellant.

Joseph B. Scott, Washington, D. C., and Leonard Schaitman, Dept. of Justice, Alice Daniel, Acting Asst. Atty. Gen., Washington, D. C., Hubert H. Bryant, U. S. Atty., Tulsa, Okl. (Stephen F. Eilperin, Sol.,

Washington, D. C., of counsel, and Steve Ostrach, Washington, D. C., on the brief), for Nuclear Regulatory Commission, defendant-appellee.

Joseph Gallo of Isham, Lincoln & Beale, Washington, D. C., Kenneth W. East, Tulsa, Okl. (Martha E. Gibbs, Chicago, Ill., of counsel and Peter Thornton of Isham, Lincoln & Beale, Chicago, Ill., on the brief), for Public Service Co. of Oklahoma, defendant-appellee.

George L. Edgar and Kevin P. Gallen of Morgan, Lewis & Bockius, Washington, D. C. (F. Paul Thieman, Jr. and J. Kenton Francy of Crowe & Thieman, Tulsa, Okl., of counsel and on the brief), for General Elec. Co., defendant-appellee.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

The issue here is whether the Government in the Sunshine Act, 5 U.S.C. § 552b, *et seq.* (1976), applies to an adjudicatory hearing before the Atomic Safety and Licensing Board. The trial court held that the Act did not apply. We agree.

The Public Service Company of Oklahoma filed an application with the Nuclear Regulatory Commission, hereinafter generally referred to as the Commission, requesting that it be granted a construction permit to build and operate a nuclear power plant, to be located some 23 miles east of Tulsa, Oklahoma and known as the Black Fox Station. As a part of the Commission's proceedings, the Commission's adjudicatory arm, the Atomic Safety and Licensing Board, hereinafter generally referred to as the Board, commenced hearings on Public Service Company's application, such hearings being held in Tulsa, Oklahoma. During the course of these hearings, an internal report of the General Electric Company, which company was under contract to supply the Nuclear Steam Supply System for the proposed Black Fox Station, became pertinent and relevant to the issues then under consideration by the Board. General Electric was reluctant to produce its report,

known as the Reed Report, without protective orders, claiming that the report contained trade secrets. An agreement was worked out between the parties whereby the Reed Report, or at least the pertinent portions thereof, were produced with the understanding that the hearings of the Board which concerned the Reed Report would be held *in camera,* i. e., a closed hearing not open to the public.

It was in this general setting that Brian Dennis Hunt, a resident of Tulsa, Oklahoma, brought the present action against the Commission and the Board. Jurisdiction was based on 5 U.S.C. § 552b(h)(1). The complaint generally alleged the background facts summarized in the paragraph immediately above. The gist of the complaint was that the Government in the Sunshine Act precluded the Board from holding hearings closed to the general public. The relief sought was a temporary restraining order, and a preliminary and permanent injunction enjoining the Board from holding closed hearings "on any matter relating to the Reed Report." General Electric and the Public Service Company of Oklahoma were permitted to intervene as defendants. Each filed an answer, admitting that all hearings before the Board relating to the Reed Report were to be closed hearings, i. e., not open to the public, and denying that the Sunshine Act covered the hearings of the Board. A motion opposing the request for a temporary restraining order, as well as a motion to dismiss, were filed on behalf of the Commission and the Board.

At the conclusion of a hearing on Hunt's request for a temporary restraining order, the trial court, after denying the request for a temporary restraining order, indicated, with the apparent approval of all concerned, that the entire case boiled down to a single issue: Did the Sunshine Act cover and apply to the adjudicatory hearing then about to take place before the Board? The trial court stated that if the Act by its terms did apply, then injunctive relief was in order; but that if the Act did not cover the Board's hearing, then the entire action should be dismissed. The parties were then

granted three days to file simultaneous briefs, all concerned being desirous of a speedy determination of the matter.

The trial court later ruled that the Sunshine Act by its terms did not encompass the hearings of the Board, and accordingly dismissed the action. The trial court's order now appears as *Hunt v. Nuclear Regulatory Commission*, 468 F.Supp. 817 (N.D. Okl.1979). From that dismissal order Hunt prosecutes the present appeal.

In this Court Hunt asked for an injunction pending final disposition of his appeal. In this regard Hunt sought an order of this Court enjoining the Commission from issuing a construction permit to Public Service Company for the construction and operation of the Black Fox Station, pending final disposition of the appeal. We declined to take immediate action on Hunt's motion for injunction pending appeal, and accelerated the briefing of the appeal proper. Briefing is now complete and the case has been orally argued, again on an expedited basis. Accordingly, the appeal is itself ripe for final determination.

Before examining the Sunshine Act, reference should first be made to the nature of both the Commission and the Board and the relationship between the two. The Atomic Energy Act of 1954, 42 U.S.C. § 2011, *et seq.*, gave the Atomic Energy Commission the authority, among other things, to regulate nuclear power. The Energy Reorganization Act of 1974, 42 U.S.C. § 5801, *et seq.*, transferred the licensing and related regulatory functions of the Atomic Energy Commission to the Nuclear Regulatory Commission. The Nuclear Regulatory Commission is composed of five members appointed by the President by and with the advice and consent of the Senate. 42 U.S.C. §§ 5841(a)(1) and 5841(b)(1). The 1974 Act also requires that "a quorum for the transaction of [Nuclear Regulatory Commission] business shall consist of at least three members present." 42 U.S.C. § 5841(a)(1).

Pursuant to statutory authority, the Nuclear Regulatory Commission provides a comprehensive agency process for consideration of the public health and safety and of the environmental aspects of nuclear power plant licensing. Utility companies wishing to construct or operate a nuclear power plant must make detailed health, safety, and environmental submissions. The Commission's staff initially reviews these submissions and subsequent to that review the Commission participates as an independent party to the licensing process. In accordance with the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*, adjudicatory hearings are then held on all construction permit applications. Any person whose interest may be affected by the proceeding may intervene as a party to such hearings. 42 U.S.C. § 2239(a). The hearings are conducted for the Commission by three-member Atomic Safety and Licensing Boards.

Atomic Safety and Licensing Boards are provided for by 42 U.S.C. § 2241. That statute reads as follows:

*Atomic safety and licensing boards;*
*establishment; membership;*
*functions; compensation*

(a) Notwithstanding the provisions of 7(a) and 8(a) of the Administrative Procedure Act, the Commission is authorized to establish one or more atomic safety and licensing boards, each comprised of three members, one of whom shall be qualified in the conduct of administrative proceedings and two of whom shall have such technical or other qualifications as the Commission deems appropriate to the issues to be decided, to conduct such hearings as the Commission may direct and make such intermediate or final decisions as the Commission may authorize with respect to the granting, suspending, revoking or amending of any license or authorization under the provisions of this chapter, any other provision of law, or any regulation of the Commission issued thereunder. The Commission may delegate to a board such other regulatory functions as the Commission deems appropriate. The Commission may appoint a panel of qualified persons from which board members may be selected.

(b) Board members may be appointed by the Commission from private life, or designated from the staff of the Commission or other Federal agency. . . .

The composition of an Atomic Safety and Licensing Board varies from hearing to hearing and, we are informed, is typically composed of an environmental scientist, a nuclear engineer, and a lawyer. The licensing board in an individual case is selected by the Commission from a panel of some 60 full and part-time members.[1] Advice and consent of the Senate is not required in this selection process. An appeal from a decision of an Atomic Safety and Licensing Board is heard by a three-member Atomic Safety and Licensing Appeal Board, also composed of scientists and lawyers. The Nuclear Regulatory Commission itself has discretionary power to review a decision of an Appeal Board. Finally, the several Courts of Appeals have exclusive jurisdiction to review all final orders of the Commission entered in licensing proceedings. 42 U.S.C. § 2239 and 28 U.S.C. §§ 2341–44. See also *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

As above indicated, Hunt relies totally on the provisions of 5 U.S.C. § 552b of the so-called Sunshine Act in his effort to "open up" the Board's hearings. That statute provides as follows:

§ 552b. *Open Meetings*

(a) For purposes of this section—

(1) the term "agency" means any agency, as defined in section 552(e) of this title, headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate, and any subdivision thereof authorized to act on behalf of the agency;

(2) the term "meeting" means the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business, but does not include deliberations required or permitted by subsection (d) or (e); and

(3) the term "member" means an individual who belongs to a collegial body heading an agency.

(b) Members shall not jointly conduct or dispose of agency business other than in accordance with this section. Except as provided in subsection (c), every portion of every *meeting of an agency* shall be open to public observation. (Emphasis added.)

Except as provided for in 5 U.S.C. § 552b(b), which provision we need not reach in the present case because of our view that the statute itself does not apply to the Atomic Safety and Licensing Board, the statute in the last clause thereof provides that "every portion of every *meeting of an agency* shall be open to public observation." (Emphasis added.) However, in preceding sections of the statute the term "meeting of an agency," is so defined as to clearly mean that the mandate for open hearings does not apply to an adjudicatory hearing before an Atomic Safety and Licensing Board, though it would apply to a meeting of the Nuclear Regulatory Commission itself.

5 U.S.C. § 552b(a)(1) defines the term "agency" as that word is used in 5 U.S.C. § 552b(b). The term "agency" as used in the statute is defined as meaning an agency which, *inter alia*, is headed by a collegial body composed of two or more individual members, a majority of whom are appointed by the President with the advice and consent of the Senate. An Atomic Safety and Licensing Board is clearly *not* an agency within the meaning of the statute. Members of such a Board are not appointed by the President, but by the Nuclear Regulatory Commission.

---

1. The Board members in the instant case are two full-time Commission employees and one part-time consultant from private life.

■ The last clause in 5 U.S.C. § 552b(a)(1) provides that the mandate that all meetings of agencies be open applies not only to agencies whose members, or a majority thereof, are appointed by the President with the advice and consent of the Senate, but also applies to any subdivision of such collegial body authorized to act on behalf of such an agency.[2] In our view, an Atomic Safety and Licensing Board is not a subdivision of the Nuclear Regulatory Commission. This is not an instance where an agency, i. e. a collegial body, a majority of whose members are appointed by the President, has divided itself into sub-groups to conduct the business of the agency. No member of the Commission is on the Board with which we are here concerned.

Any possible doubt on this particular matter is cleared up by ensuing sections in the statute. 5 U.S.C. § 552b(a)(2) defines the term "meeting" as the deliberations of at least the number of individual agency members required to take action on behalf of the agency. This language is entirely consistent with the premise that the "subdivision" mentioned in 5 U.S.C. § 552b(a)(1) is a subdivision of the "collegial body" and that such subdivision must be composed of a sufficient number of the members of the collegial body as to permit action on behalf of the collegial body.

If there still be any doubt on this particular matter, such should be resolved by the provision of 5 U.S.C. § 552b(a)(3). That particular section defines the term "member" as that term is used in the definition of both the term "agency" and the term "meeting." The statute defines the term "member" as an individual "who belongs to a collegial body heading an agency." No

member of the present Board belongs to the "collegial body heading the agency."

■ Based on our reading of 5 U.S.C. § 552b we are of the definite view that the Sunshine Act does not apply to the Board here involved. Since Hunt relies totally on the provisions of 5 U.S.C. § 552b to open up the Board hearings involving the Reed Report, the trial court acted properly in dismissing the action. Our analysis of the statute parallels that of the trial court, and we therefore are generally in accord with the trial court's reasoning. 468 F.Supp. 817 (N.D.Okl.1979).

We could well let the entire matter rest at this point, since in our view the statute is clear and unambiguous. However, we would briefly note that our understanding of the statute is in accord with the legislative history of the Act, is in accord with regulations of the Commission implementing the Act, and is in accord with an "Interpretative Guide to the Government in the Sunshine Act," published by the Office of the Chairman of the Administrative Conference of the United States.

■ Reference to legislative history is said to be quite proper, "however clear" the language of a statute may appear to be. Such reference is permissible in order to make certain that the apparent "clearness" is not superficial in nature. *Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976) and *United States v. American Trucking Ass'ns,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). We do not propose to here dwell at length on the legislative history of the Sunshine Act. Such is fully reviewed in the trial court's order. 468

---

2. At oral argument opposing counsel were in agreement that the ultimate question in this case is whether the term "any subdivision thereof" as used in 5 U.S.C. § 552b(a)(1) means any subdivision of a "collegial body" or any subdivision of an "agency." Hunt agreed that if the term "any subdivision thereof" means any subdivision of a "collegial body," then under such interpretation the Atomic Safety and Licensing Board is not a subdivision of the Nuclear Regulatory Commission. In our view the term "any subdivision thereof" can only

mean subdivision of a collegial body. In this statute we are not concerned with an "agency" in the broad sense of that word. The statute itself limits the Sunshine Act to any agency headed by a collegial body, a majority of whose members are appointed by the President with the advice and consent of the Senate. That is the only type of an agency covered by the Act. Hence, the term "any subdivision thereof" can only mean a subdivision of the "collegial body" type of agency.

F.Supp. 817, 820–21 (N.D.Okl.1979). The reader of this opinion is directed to the trial court's order for legislative history.

In promulgating its proposed regulations implementing the Sunshine Act, the Nuclear Regulatory Commission defined the term "commission" to mean "the collegial body of five commissioners or a quorum thereof . . . or any subdivision of that collegial body authorized to act on its behalf, and shall not mean any body not composed of members of that collegial body." 41 Fed. Reg. 55882 (1976). In that regard the Commission commented:

> The definition of Commission is taken from the definition of 'agency' in the Act, 5 U.S.C. 552b(a)(1). Subdivisions of the Commission not composed of Commission members such as the Atomic Safety and Licensing Board, or the Advisory Committee on Reactor Safety, are specifically excluded from the definition. 41 Fed. Reg. 55880 (1976).

This proposed regulation of the Nuclear Regulatory Commission as finalized provides that the "Commission" means the collegial body of five Commissioners and any subdivision of that collegial body, but does *not* "mean any body not composed of members of that collegial body." 10 C.F.R. § 9.101(a) (1979).[3] In line with the foregoing, the Commission commented that the legislative history of the Sunshine Act plainly supports the conclusion that an Atomic Safety and Licensing Board is not subject to the Act. 42 Fed.Reg. 12875 (1975).

Under the Administrative Conference Act, 5 U.S.C. §§ 574(2), 575(c)(14) (1976), the Office of the Chairman of the Administrative Conference of the United States is generally charged with advising and assisting federal agencies on matters relating to administrative procedure. Under the Sunshine Act, the Office of the Chairman is specifically charged to consult with each agency subject to the Sunshine Act and to review any regulations proposed for promulgation under the Act by such agency. 5 U.S.C. § 552b(g).

With regard to the question of the applicability of the open meeting requirement to lower-level agency boards and tribunals, the Office of the Chairman in the "Interpretative Guide to the Government in the Sunshine Act" commented as follows:

> It should be noted that 'subdivision thereof' refers back to 'collegial body,' not to 'agency.' Subdivisions made up entirely of employees other than members of the collegial body are not covered by the Act, even though they may be authorized to act on behalf of the agency. The basis for excluding subdivisions made up of agency employees is well stated in the Senate Report:
>
> > 'The agency heads are high public officials, having been selected and confirmed through a process very different from that used for staff members. Their deliberative process can be appropriately exposed to public scrutiny in order to give citizens an awareness of the process and rationale of decision-making.'[4]

Since the judgment of the trial court is being affirmed, Hunt's request for injunction pending appeal is rendered moot.

Judgment affirmed.

---

**3.** We are advised that a rule that the open meeting requirement of the Sunshine Act applies only to meetings in which members of the collegial body heading the agency are present and participating has been promulgated by such agencies as Civil Aeronautics Board, Civil Service Commission, Federal Trade Commission, Interstate Commerce Commission, National Labor Relations Board, United States Parole Commission, as well as numerous other agencies.

**4.** R. Berg and S. Klitzman, *An Interpretative Guide to the Government in the Sunshine Act,* Office of the Chairman of the Administrative Conference of the United States (June 1978).