**Joseph W. JOHNSTON,**
**Plaintiff-Appellant,**

v.

**NUCLEAR REGULATORY COMMISSION of the United States of America, et al., Defendants-Appellees,**

**and**

**Commonwealth Edison Company, Intervenor Defendant-Appellee.**

**No. 84–1583.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1985.

Decided July 15, 1985.

Rehearing and Rehearing En Banc Denied Aug. 12, 1985.

Calvin Sawyier, Winston & Strawn, Chicago, Ill., for plaintiff-appellant.

Elizabeth M. Landes, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Daniel S. Hefter, Isham Lincoln & Beale, Chicago, Ill., for defendant-appellee.

Before BAUER, COFFEY and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

This appeal raises the question of whether the open meeting requirement of the "Government in the Sunshine Act," 5 U.S.C. § 552b ("Sunshine Act"), applies to meetings of the Nuclear Regulatory Commission's Atomic Safety Licensing Board. Under the unique facts of this case, resolution of this issue requires a determination of the validity of the Nuclear Regulatory Commission's regulations implementing the Sunshine Act, an issue which is exclusively within the jurisdiction of the United States Court of Appeals for the District of Columbia. We dismiss the case.

## I.

Believing that increased openness would make government more fully accountable to the people, Congress enacted the Sunshine Act to open the deliberations of multi-member federal agencies to public view. *Common Cause v. Nuclear Reg. Comm.*, 674 F.2d 921, 928 (D.C.Cir.1982). Agencies covered by the Sunshine Act are defined as:

"Any agency, as defined in § 552(e) of this title, headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate, and any subdivision thereof authorized to act on behalf of the agency."

§ 552b(a)(1). When a quorum of individuals belonging to the collegial body heading the agency meet to conduct official agency business, the meeting must be open to the public unless one of the Act's exemptions is applicable. §§ 552b(a), (b), and (c). The agency must announce, at least a week in advance of the meeting, its subject matter, time, place, and whether the meeting will be open or closed. § 552b(e)(1). Most closed meetings must be transcribed or recorded. § 552b(f)(1). The subject agencies are required to promulgate regulations to implement the Sunshine Act's requirements. § 552b(g).

The Nuclear Regulatory Commission ("NRC" or "Commission") appoints Atomic Safety and Licensing Boards ("ASLB") to conduct public hearings and to make intermediate or final decisions in administrative proceedings relating to granting, suspending, revoking or amending licenses issued by the NRC. 10 C.F.R. Part 2, App.A. Each ASLB consists of "one member who is qualified in the conduct of administrative proceedings and two members who have such technical or other qualifications as the Commission deems appropriate to the issues to be decided." *Id.* The NRC regulations implementing the Sunshine Act define "Commission" as "the collegial body of five Commissioners or a quorum thereof as provided by § 201 of the Energy Reorganization Act of 1974, or any subdivision of that collegial body authorized to act on its behalf, and shall not mean any body not composed of members of that collegial body." 10 C.F.R. § 9.101(a). The regulations further define "meeting" as "the deliberations of at least a quorum of Commissioners where such deliberations determine or result in the joint conduct or disposition of official Commission business...." 10 C.F.R. § 9.101(c). When the NRC proposed the regulations implementing the Sunshine Act, it specifically noted,

"[t]he definition of Commission is taken from the definition of 'agency' in the Act, 5 U.S.C. 552b(a)(1). Subdivisions of the Commission not composed of Commission members such as the Atomic Safety and Licensing Board, or the Advisory Committee on Reactor Safety, are specifically excluded from the definition."

Rules Governing Public Attendance, 41 Fed.Reg. 55,881 (1976) (to be codified at 10 C.F.R. Part 9).

During 1983, the ASLB held evidentiary hearings concerning whether an operating license should be granted to the Byron

Nuclear Plant, located in northern Illinois. On or about May 23, 1983, the ASLB announced that the hearing scheduled for May 26, 1983, in Rockford, Illinois would be closed to the public. The plaintiffs filed a complaint for injunctive relief in the district court alleging that the ASLB's announcement of the closed meeting would be violative of the Sunshine Act's open meeting requirement or, in the alternative, violated the Act's requirement that agencies subject to the Act give sufficient notice of their intent to close hearings.[1] Before the preliminary injunction motion to prevent closure of the May 26th hearing was heard, the ASLB's attorney informed the court that the meeting would be open to the public. However, the attorney insisted that the ASLB had the authority to close its evidentiary hearing and that the decision to close an evidentiary hearing could be made at the hearing itself.

On July 26, 1983, the ASLB issued an order stating that the "hearing [to be held on August 9, 1983] may be *in camera.*" The plaintiffs filed another motion for preliminary injunction and the ASLB indicated to the court that it no longer intended to hear any evidence *in camera* that would be part of the record but did intend to examine *in camera* certain proposed testimony in order to make a preliminary ruling as to its competency and admissibility. The district court "generally continued" the plaintiffs' motion for a preliminary injunction and on August 9 and 10, 1983, the ASLB held *in camera, ex parte* meetings with the NRC staff and Office of Investigation to review information they had gathered regarding pending investigations and inspections at the Byron Plant. The ASLB, apparently concerned that premature public disclosure of the incomplete investigations and inspections might give rise to unwarranted concern in the surrounding community, held the meetings with the staff to determine whether or not an evidentiary presentation regarding pending inspections was appropriate and, if so, whether the presentation of the evidence should be open or closed to the public. After hearing the staff's information, the ASLB decided not to hold an evidentiary hearing. Because the staff's information was presented only at the *in camera, ex parte* meetings, it was not a part of the official record and could not be considered by the ASLB in making its ultimate licensing decision. 10 C.F.R. Part 2, App. A, V(e)(2).

On August 16, 1983, the plaintiffs filed an amended complaint for declaratory and injunctive relief. Noting that the ASLB had "publicly and in open court taken the position that the licensing hearings [regarding the Byron Nuclear Plant] can be closed to the public, *sua sponte*, at anytime and upon a minute's notice," the plaintiffs complained that "[t]he question whether defendants have the right they assert to close licensing hearing ... may escape judicial review unless a declaratory judgment determining that question is issued by this court." In addition to asking the court to declare that "the defendants may not lawfully close licensing hearings except in full compliance with the Sunshine Act and other provisions of the law for public hearings," the plaintiffs asked the court to grant "such ancillary relief, by way of injunction, as will prevent defendants from unlawfully closing any of the licensing hearings regarding the Byron Nuclear Plant."

On August 17, 1983, the ASLB closed the evidentiary record on the Byron Nuclear Plant "until further order." Although the ASLB noted that the closure of the evidentiary record did not "foreclose all possibilities that it might inquire again into the status of pending inspections and investigations," no additional inquiries were undertaken. On January 13, 1984, the ASLB

---

**1.** Suits to prevent closure of the May 26th hearings were filed by plaintiff Johnston and by plaintiff Rockford Newspaper, Inc. The Rockford League of Women Voters, DeKalb Area Alliance for Responsible Energy, Sinnissippi Alliance for the Environment, and Business and Professional People for the Public Interest intervened as plaintiffs in both cases. Commonwealth Edison, the company seeking the operating license for the Byron Nuclear Plant, also intervened as a defendant. The cases were consolidated at Judge Roszkowski's request.

issued a decision denying Commonwealth Edison's request for a license to operate the Byron Nuclear Plant and terminated the Byron licensing proceeding.

The defendants filed motions to dismiss or, in the alternative, for summary judgment arguing that the plaintiffs' amended complaint failed to allege a case or controversy within the subject matter jurisdiction of the district court. The defendants further argued that even if the plaintiffs' complaint did allege a case or controversy, the case was moot. Finally, the defendants alleged that if the case was not moot, the ASLB was not subject to the Sunshine Act.

Addressing the question of whether the action presented a case or controversy within the meaning of Article III, § 2, the district court held that there was a substantial controversy between the parties because the ASLB had "taken the position that its meetings are subject to being closed with little or no notice, [thus,] the plaintiffs could well be deprived of any opportunity to challenge the closing of a future hearing until after the actual closing." Furthermore, the court found that the issue was not moot because it "is capable of repetition, yet evading review." Specifically, the court held that the case was not mooted by the termination of the licensing proceedings because, "as the plaintiffs point out, Commonwealth Edison has indicated that it will attempt to change the ASLB's ruling and there is at least a fair likelihood that some additional ASLB proceedings may be undertaken as a result of a motion to reconsider or a contrary decision on appeal." Turning to the question of whether the ASLB is subject to the Sunshine Act, the court noted that the Act defined the term "member" as "an individual who belongs to a collegial body heading an agency." § 552b(a)(3). Moreover, the Act specified that agencies are "headed by a collegial body composed of two or more individual members, a majority of whom

are appointed to such position by the President with the advice and consent of the Senate...." The court concluded that the activities of the ASLB are not governed by the Act because the administrative law judges making up the ASLB are not appointed by the President with the advice and consent of the Senate. Thus, the administrative law judges did not fall within the statutory definition of "members" who "shall not jointly conduct or dispose of agency business except in accordance with the Act." The court rejected the plaintiffs' argument that the NRC Commissioners must not be allowed to escape the application of the Sunshine Act by delegating their authority to an entity such as the ASLB, "because Congress itself authorized both the existence and the function of the ASLB."

## II.

### A. *Judicial Review of Agency Compliance with the Sunshine Act.*

Judicial review of agency compliance with the Sunshine Act is provided for in two sections of the Act: subsections (g) and (h). Section 552b(g) specifies that "[s]ubject to any limitations of time provided by law, any person may bring a proceeding in the United States Court of Appeals for the District of Columbia to set aside agency regulations issued pursuant to this subsection that are not in accord with the requirements of subsections (b) through (f) of this section and to require the promulgation of regulations that are in accord with such subsections." *Id.* Subsection (g) is applicable to challenges to an agency rule on its face and not a dispute arising out of its application to a particular meeting. R. Berg & S. Klitzman, An Interpretative Guide to the Government in the Sunshine Act, 82 (1978) (hereinafter "Interpetative Guide").[2] *See, e.g., Pacific Legal Foundation v. Counsel on Environ. Qual-*

---

[2] Congress requested the Office of the Chairman of the Administrative Conference of the United States to prepare the Interpretative Guide. *Federal Communications Commission v. ITT World Communications, Inc.,* 466 U.S. 463, 104 S.Ct.

1936, 1941, 80 L.Ed.2d 480 (1984). The Interpretative Guide, which was prepared after extensive consultation with the affected agencies, was cited with approval by the Supreme Court. *Id.*

*ity,* 636 F.2d 1259 (D.C.Cir.1980) (The Court held that the implementing regulations of the Counsel on Environmental Quality which exempted from the open meeting requirement meetings involving "advice to the President [or] actions taken by the Chairman acting as Director of the Office of Environmental Quality under the Environmental Quality Improvement Act" violated the Sunshine Act. 636 F.2d at 1265–66); *see also* S.Rep. No. 354, 94th Cong. 1st Sess. 33 (1975) ("S.Rep.") *reprinted in* Senate and House Committee on Government Operations, Government in the Sunshine Act—S.5 (Public Law 94–409) Source Book: Legislative History, Text, and other Documents, 228 ("Source Book") ("[A] person may invoke this provision, for example, to challenge the applicability of (d)(4) to a particular agency.")[3]

Subsection (g) provides that direct challenges to the implementing regulations must be brought "[s]ubject to any limitations of time provided by law." The legislative history reveals that "[t]his limitation of time for a direct challenge to the regulations is of course not intended to limit the right of a litigant to question their validity when they are applied to him at some later date." H.Rep. No. 880, 94th Cong.2d Sess. 16 (1976) U.S.Code Cong. & Admin.News 1976, pp. 2183, 2198 ("H.Rep."); Source Book at 527. The Act does not require litigants to demonstrate that they are "adversely affected" or "aggrieved" by the challenged regulation to have standing. S.Rep. at 33; Source Book at 228.

"Any person has standing to bring an action since the bill is designed to protect the right of the general public to attend agency meetings. Thus, standing to bring action under this section cannot be limited to only those persons who may be directly affected by particular agency action taken at the meeting. Any person with sufficient interest in the matter to want to bring suit under this section will be able to do so."

*Id.*

Section 552b(h)(1), the second avenue of judicial review,[4] grants the district courts jurisdiction to "enforce the requirements of subsections (b) through (f) of this section by declaratory judgment, injunctive relief, or other relief as may be appropriate."

"Subsection (h) provides for judicial enforcement of the provisions of section 552b where agency actions, including failures to act, relating to a meeting are asserted to be in violation of the provisions of this section. Subsection (h) is not available for pre-enforcement review of an agency's Sunshine regulation; such an action must be brought under subsection (g). However, if a dispute over a particular act of alleged noncompliance, such as the use of an improper procedure in closing the meeting, involves the validity of the agency regulation, this issue may be resolved in an action brought under subsection (h)."

Interpretative Guide at 85–6. *See, e.g., Federal Communications Commission v. ITT World Communications, Inc.,* 466 U.S. 463, 104 S.Ct. 1936, 80 L.Ed.2d 480

---

**3.** Section (d)(4) specifies that an agency may provide by regulation for the closing of meetings if the majority of the meetings may properly be closed pursuant to one of the statutory exemptions to the Sunshine Act.

**4.** Section 552b(h)(2) permits any Federal Court "authorized by law" to review an agency action to "inquire into" Sunshine Act violations and the proceedings leading to the agency action. For example, a company challenging the validity of an agency rule may include in its challenge the fact that the agency adopted the rule in a meeting improperly closed to the public. S.Rep. at 34; Source Book at 229. "Since subsection (h)(2) does not create an independent right of action, it may be invoked only by one who is

properly participating in the proceedings pursuant to other applicable law, i.e., by one who has standing to challenge the underlying agency action." Interpretative Guide at 90. *See, e.g., Washington Assoc. for Television & Children v. F.C.C.,* 665 F.2d 1264 (D.C.Cir.1981) (challenge to the FCC definition of "agency" included in challenge to FCC approval of transfer of control of television station); *Communication Systems, Inc. v. F.C.C.,* 595 F.2d 797 (D.C.Cir.1978) (challenge to FCC practice of conducting business by circulating papers rather than holding a meeting included in petition for review of refusal by FCC of authorization to convert a radio station from a Class B to a Class C station).

(1984) (whether a meeting between the FCC's telecommunications committee and representatives of European nations was a "meeting" for purposes of the Act). Under subsection (h)(1), the district court may grant appropriate equitable relief including, "ordering an agency to open a meeting it had planned to close, ordering the release of a record of an improperly closed meeting, or issuing a declaratory judgment." S.Rep. at 33; Source Book at 228. According to the legislative history, "[a]s in the case of subsection (g) [providing for judicial review of implementing regulations], any member of the public has standing to bring suit under this subsection." S.Rep. at 34; Source Book at 229.

### B. *Jurisdiction.*

■ The Act specifically limits the jurisdiction of the federal courts other than the United States Court of Appeals for the District of Columbia to questions arising under § 552b(h). Thus, we must determine whether this case arises under subsection (g) or subsection (h) of the Act. Our initial inquiry is whether the plaintiffs allege an "action ... brought by any person against an agency ... within 60 days *after* the meeting out of which the violations of this section arises ..." under § 552b(h)(1). The district court commented:

> "The meetings of August 9–10, 1983, arguably give rise to more than just a potential violation of the Act. While defendants and defendant-intervenors contend the plaintiff acquiesced in the holding of those meetings, conceding they were not within the scope of the Sunshine Act, it is not totally clear from the record that such is the case. Thus, in addition to the near violations of the Sunshine Act outlined above, at least one plaintiff has alleged an actual violation."

However, a review of the record reveals that the plaintiffs never filed a complaint alleging that the ASLB's closed meetings

with the staff on August 9 and 10 violated the Sunshine Act. Rather, the plaintiffs' amended complaint, filed after the closed meetings with the staff, alleged that "plaintiff has been twice before in court to seek injunctive remedy against defendants' threat to close hearings scheduled at the time, but each time the defendants have failed to go ahead and close to the public the hearing of evidence relating to whether or not an operating license should be granted." Thus, the plaintiffs do not complain that a specific meeting was closed. To the contrary, their claim for relief is based upon speculation and the allegation that because the defendants believe they are authorized to close ASLB meetings at anytime and without giving notice: "[i]t is not possible for plaintiff or the press or any member of the public to obtain adequate remedy for the denial of the statutory right to attend commission hearings which will occur if and when defendants exercise their asserted right *sua sponte* to close a licensing hearing." Because the plaintiffs asked for prospective relief and failed to base their claim on the closure of a specific meeting, we hold that the amended complaint is not "an action ... brought by any person against an agency ... within sixty days after the meeting out of which the violation of this section arises ..." under § 552b(h)(1).[5]

We turn now to the question of whether the plaintiffs' amended complaint is "an action ... brought by any person against an agency *prior to* ... the meeting out of which the violation of this section arises...." § 552b(h)(1). According to the Interpretive Guide, "[s]ubsection (h) is not available for pre-enforcement review of an agency's Sunshine regulation; such an action must be brought under subsection (g). However, if a dispute over a particular act of noncompliance ... involves validi-

---

5. The plaintiffs' failure to base their complaint on an actual closing of an ASLB hearing distinguishes this case from *Hunt v. Nuclear Regulatory Commission,* 611 F.2d 332 (10th Cir.1979), *cert. denied,* 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980). In *Hunt,* the ASLB actually closed a construction permit hearing to consider a report prepared by the company under contract to construct part of the nuclear power plant and the plaintiffs challenged that specific closure.

ty of the agency regulation, this issue may be resolved in an action brought under subsection (h)." Interpretive Guide at 85–6. The venue, expedited review, and burden of proof provisions of subsection (h) demonstrate that the subsection is intended to apply to situations in which an agency actually schedules a closed meeting. Congress limited venue of subsection (h) actions to the district in which the meeting was or is to be held, where the agency is headquartered or in the District of Columbia to prevent "duplicative lawsuits spread across the country covering the same agency meeting or meetings." Source Book at 611. (Remarks of Sen. Horton.) Furthermore, Congress was concerned "that actions brought under this subsection be handled expeditiously for public participation to be meaningful." S.Rep. at 33. To achieve expeditious review, Congress provided that, "[t]he defendant must serve his answer within 30 days after the service of the complaint, and the court is not given discretion ... to extend that time limit." Conf.R.Note 1178, 94th Cong.2d Sess. 22 (1976), *reprinted in* Source Book at 804. Additionally, the statute contemplates judicial review of facts relevant to an agency decision to close a meeting: the reviewing court is authorized to examine *in camera* any portion of the transcript, recording, or minutes of the closed meeting, "and may take such additional evidence as it deems necessary." The burden of proof is on the agency to sustain its closing because "in most cases the agency will be the only party in possession of information that might justify closing the meeting. The burden must therefore be on the agency to produce any facts that may support its action." S.Rep. at 33.

Moreover, the statute of limitation and jurisdiction requirements of subsection (g) must be considered when deciding whether an agency must actually schedule a closed meeting pursuant to its implementing regulations before a suit may be filed under 552b(h)(1). Subsection (g) provides that challenges to implementing regulations shall be brought in the United States Court of Appeals of the District of Columbia

"subject to any limitations of time provided by law." If plaintiffs were allowed to challenge implementing regulations under subsection (h) when an agency has not scheduled a closed meeting or actually closed a meeting under the authority of its implementing regulations, the suit could be filed in district court and the plaintiffs could avoid potential statute of limitations objections. Thus, to preserve the Act's requirement that facial challenges to implementing regulations be brought in the United States Court of Appeals for the District of Columbia "subject to any limitations provided by law," an agency must schedule a closed meeting or actually close a meeting pursuant to the implementing regulations before a suit may be filed under 552b(h)(1).

Because the timeliness and burden of proof requirements of 552b(h)(1) contemplate agency action relative to a particular meeting and because the statute of limitations and jurisdiction requirements of 552b(g) could be avoided if plaintiffs were allowed to file suit under 552b(h)(1) when an agency has not scheduled a closed meeting or actually closed a meeting pursuant to its implementing regulations, we hold that a meeting must actually be scheduled as a closed meeting or actually closed pursuant to the agency's implementing regulations before a challenge to the implementing regulations may be filed as "an action ... brought by any person against an agency prior to ... the meeting out of which the violation of this section arises" under § 552b(h)(1).

■ A review of the record reveals that the plaintiffs have failed to challenge a scheduled meeting. On August 17, 1983, one day after the plaintiffs filed their amended complaint, the ASLB closed the evidentiary record on the Byron Nuclear Plant "until further order." On January 13, 1984, the ASLB denied Commonwealth Edison's request for a license to operate the Byron Nuclear Plant and terminated the Byron licensing proceedings. The plaintiffs have failed to inform the court that the ASLB has scheduled or held a closed hearing concerning the Byron Nucle-

ar Power Plant license in the Northern District of Illinois.[6] Nor may the plaintiffs rely on the ASLB's past conduct to prove that closure of a hypothetical meeting in the Northern District of Illinois is likely; the plaintiffs discern a "pattern of conduct" by the ASLB because the ASLB acts in accordance with the agency's regulations implementing the Sunshine Act. The plaintiffs, in essence, challenge the implementing regulations. We hold that the plaintiffs' amended complaint, which challenges the authority of the ASLB to close its evidentiary hearings without complying with the Sunshine Act but fails to specify a scheduled closed meeting of the ASLB in the Northern District of Illinois, does not state a cause of action under § 552b(h)(1) because the allegations do not concern a "meeting out of which the violation of this section arises."

The district court, by basing its subject matter jurisdiction on § 552b(h)(1) erred as a matter of law because the plaintiffs' cause of action did not arise out of a particular meeting. Furthermore, the district court, which characterized the ASLB's actions taken in compliance with the implementing regulations as a "pattern of conduct," erred when it held that the action was not moot because "the issue presented by this action is one of great public concern which is 'capable of repetition, yet escaping review.'" As we pointed out earlier, none of the plaintiffs' pleadings specifically alleged that the ASLB actually closed a hearing in violation of the Sunshine Act. Thus, there was no factual basis for the court's

notation that, "at least one plaintiff has alleged an actual violation." Therefore, the only issue presented in the complaint is a "potential violation of the Act." Restated "this potential violation of the Act" is nothing but pure speculation based upon the possibility that the ASLB, pursuant to the agency's implementing regulations, will in the future close a meeting in the Northern District of Illinois. Because the implementing regulations are in effect, the question of whether the implementing regulations comply with the Act is not moot and the district court did not need to apply the "capable of repetition, yet evading review" exception to mootness to find that the case was not moot. Additionally, the district court's invocation of the "capable of repetition, yet evading review" exception to mootness is misplaced even if the question was moot. Assuming hypothetically that the Sunshine Act would apply to the ASLB meetings (a question we cannot reach because the plaintiffs fail to state a cause of action under § 552b(h)(1)), we note that the plaintiffs' motions for preliminary injunction were not granted because the ASLB informed the court that it no longer intended to close the meetings. There is no factual basis for holding that the plaintiffs would not have been able to obtain an injunction before a meeting was closed because the plaintiffs, in fact, were able to obtain hearings on their motions for preliminary injunctions before the meetings were held. Furthermore, if the Act applied to meetings of the ASLB, the plaintiffs could

6. As part of their brief, the plaintiffs provided this court with a copy of a Chicago Tribune article dated Tuesday, May 8, 1984, stating that "[a]n appeals panel of the Nuclear Regulatory Commission ... ordered a new hearing [on the license for the Byron Nuclear Plant] and said the agency's licensing board should consider whether Commonwealth Edison has taken sufficient steps to correct safety deficiencies at the plant.... [The appeals panel decision] did not reverse or uphold the licensing board's decision but simply reopened the case for further proceedings.... The licensing board will announce a date for the new hearing, an NRC spokesman said." We take judicial notice of the fact that the ALSB will hold future hearings concerning the license

of the Byron Nuclear Plant. However, there is no guarantee that future hearings will be held in the Northern District of Illinois. The regulations governing the ASLB note, "[i]t is the Commission's policy and practice to *begin* the evidentiary hearing in the vicinity of the site of the proposed facility." 10 C.F.R. Part 2, App. A I(a) (emphasis added). The regulations further provide a proceeding for holding adjourned sessions of hearings in Washington, D.C. *Id.* at (b). The plaintiffs have merely proved that hearings will be held. Whether the ASLB will schedule a *closed* meeting *in the Northern District of Illinois* concerning the license of the Byron Nuclear Plant is purely a matter of speculation.

obtain transcripts, notes and recordings of a closed meeting if a reviewing court determined that the meeting was closed improperly. § 552b(h)(1). Thus, the action would not escape review because the plaintiffs could either obtain either an injunction or judicial review of the minutes of the closed meeting. We hold that the district court erred when it found that one plaintiff had alleged an actual violation of the Act; when it based its subject matter jurisdiction on § 552b(h)(1); and when it held that the case was not moot because it was capable of repetition yet evading review.

■ In summary, the plaintiffs' amended complaint fails to state "an action ... brought by any person against an agency ... within sixty days *after* the meeting out of which the violation of this section arises ..." because the amended complaint fails to allege an actual closing by the ASLB of a meeting concerning the Byron Nuclear Plant. The amended complaint does not state "an action ... brought by any person against an agency *prior to* ... the meeting out of which the violation of this section arises ..." because neither the amended complaint nor any other information provided to the court alleges that the ASLB has in fact scheduled a closed meeting concerning the Byron Nuclear Plant in the Northern District of Illinois. The allegation that the ASLB may schedule a closed hearing in the Northern District of Illinois is mere speculation that a problem will exist in the future. In essence, the plaintiffs' fear that the ASLB will close a meeting is founded upon the agency's implementing regulations excluding the ASLB from the open meeting requirements of the Sunshine Act. The plaintiffs' cause of action, which does not arise out of a particular meeting, is, in actuality, a challenge to the agency's implementing regulations under § 552b(g).

Because jurisdiction for § 552b(g) challenges to implementing regulations is exclusively in the United States Court of Appeals for the District of Columbia, this action is DISMISSED.