Howard SYMONS, Plaintiff,

v.

CHRYSLER CORPORATION LOAN GUARANTEE BOARD, Defendant.

Civ. A. No. 80–1036.

United States District Court, District of Columbia.

May 14, 1980.

Alan B. Morrison and David C. Vladeck, Katherine A. Meyer, Washington, D.C., for plaintiff:

Vincent M. Garvey, Surell Brady, Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

The Government in the Sunshine Act, 5 U.S.C. § 552b (Sunshine Act), enacted in 1976, provides that meetings of government executive agencies shall be open to the public. The Act further provides for public announcement of meetings, § 552b(e), and for the maintenance of a complete transcript or electronic recording of meetings that are closed upon the agency's invoking any of the Act's exemptions, § 552b(f). Agencies covered by the Act must publish regulations implementing the requirements of the Act. § 552b(g).

In January, 1980, Congress enacted the Chrysler Corporation Loan Guarantee Act, 15 U.S.C. §§ 1861 *et seq.* (Chrysler Act), creating the Chrysler Corporation Loan Guarantee Board (Board). As an executive agency of the federal government with decision-making authority, the Board was empowered to issue up to $1.5 billion in loan guarantees to the Chrysler Corporation un-

der specified conditions.[1] The decision of the Board to issue its guarantee is conclusive, 15 U.S.C. § 1864(b), subject only to the right of Congress to consider the matter for 15 days after the Board has reported to it. Congress' sole recourse is the passage of legislation to prevent the Board from acting.

In this proceeding, plaintiff Howard Symons, a staff attorney and lobbyist with Congress Watch, a public interest organization, seeks declaratory and injunctive relief against the Board. He asserts that the Board is an agency within the meaning of the Sunshine Act and seeks to enjoin its noncompliance with the statutory requirements. Symons had previously sought to attend the Board's meetings or to have transcripts or minutes of closed meetings made available to him. The Board refused on grounds that it was not an agency for purposes of the Sunshine Act and thus not required to comply with its terms.

Plaintiff's complaint and application for temporary injunctive relief were filed on April 25, 1980, and on that date a temporary restraining order was issued enjoining the Board from holding any meeting inconsistent with the provisions of the Sunshine Act.[2] A briefing schedule was developed for a prompt and final disposition of the matter on the merits. The plaintiff filed points and authorities in support of a preliminary injunction. The defendant opposed the grant of such relief and also moved to dismiss. The matter was otherwise fully briefed and oral argument was heard on May 9, 1980.

■ For the reasons set forth below, the Court determines that the Chrysler Board is an "agency" under 5 U.S.C. § 552b(a)(1) and is subject to the Government in the Sunshine Act.[3]

The Sunshine Act specifies that to come within its coverage, an agency must be an agency as defined in section 552(e) of Title 5,[4] and in addition must be:

> headed by a collegial body composed of two or more individual members, a majority of whom are *appointed to such position* by the President with the advice and consent of the Senate . . . .

5 U.S.C. § 552b(a)(1) (emphasis added).

The Chrysler Board consists of the Secretary of the Treasury, the Chairman of the Board of Governors of the Federal Reserve System, and the Comptroller General of the United States as voting members together with the Secretaries of Labor and Transportation as non-voting members. All of the members are thus Presidential appointees who have been confirmed by the Senate. They were not, however, technically "appointed to such position" on the Board by the President but rather by the Congress in the enactment of the Chrysler Act. The Act itself specifies that the Board shall be comprised of these five Presidential appointees. The five Board members have served on it since January, 1980. Prior to that time and prior even to the commencement of the congressional hearings on the Chrysler Act, these individuals were appointed to their respective executive positions as Secretary of the Treasury, Chairman of the Board of Governors of Federal Reserve System, and the like.

The government argues that the Sunshine Act does not apply because the appointment by the President, and later, the Senate's confirmation, were to the officials' principal positions and not to their member-

---

1. The May 12, 1980 Wall Street Journal reports that the Board conditionally approved $1.5 billion in federal loan guarantees to the corporation over the past weekend.

2. Since entry of the temporary restraining order, the Board has held several meetings, each certified as being closed to the public. Electronic recording of those meetings has been maintained by the Board.

3. Counsel for the parties represent that this litigation raises for the first time the question of what is an executive agency within the meaning of the Sunshine Act.

4. Section 552(e) describes "agency" as any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government, or any independent regulatory agency.

ship on the Chrysler Board. Such an argument is based on a crimped, unduly restrictive view of the statute and finds no support in the development of the statute. There is no legislative history which reflects an expressed intent, rationale adopted by the Congress or any hint, explanation or statement of reasons as to why the phrase "appointed to such position" was included. The legislative history is silent as to any purpose served by the distinction excluding an agency from the Act's coverage because its members are statutorily appointed following initial Presidential appointment to their principal executive positions as opposed to an agency whose members are individually appointed by the President at the outset. The legislative history also reveals a deliberate congressional choice in favor of a broad, all encompassing definition of agency as opposed to a restrictive listing of covered agencies.

In its report on the bill that was eventually enacted as the Sunshine Act, the Senate Government Operations Committee emphasized the breadth of the Act's coverage:

Section 201(a) [defining covered agencies] covers all multiheaded agencies, because the principle of openness applies to all such agencies regardless of the particular nature of its responsibilities. While many of those covered are regulatory, others have more general policymaking roles. The decisions of one may involve no less important policy questions than the decisions of the other. Opening one type of meeting to the public is as important as opening another type. The notion of including some multiheaded agencies in section 201 and excluding others would do violence to the fundamental purpose of the legislation, which is to open Government to the people wherever and whenever possible.

5. This Report is reprinted in *Government in the Sunshine Act—S. 5, Source Book: Legislative History, Texts, and Other Documents*, Senate Comm. on Government Operations and House Comm. on Government Operations, 94th Cong., 2d Sess. 196 (1976) (hereafter Source Book).

6. The fact that an agency is covered by the Sunshine Act does not, however, mean that its

S.Rep. No. 354, 94th Cong., 1st Sess. 17 (1975).[5]

The Committee had earlier observed that the same subsection did not apply to all agencies:

To be subject to the section's open meeting provisions, the collegial body comprising the agency must consist of two or more individual members, *a majority of whom are appointed by the President with the advice and consent of the Senate.*

*Id.* at 15 (emphasis added).

The Sunshine Act is a broadly remedial statute, cast in the same mold as the Freedom of Information Act, 5 U.S.C. § 552, and the Federal Advisory Committee Act, 5 U.S.C.App. I. Those two statutes as well as the Sunshine Act reflect an increasing awareness and adoption by the Congress of the principle of openness of government deliberations and the public's right to know. The Sunshine Act itself states as its purpose: "[t]o provide that the meetings of Government agencies shall be open to the public. . . ."[6] On September 13, 1976, when President Gerald Ford signed the Sunshine Act into law, he remarked, "I strongly endorse the concept which underlies this legislation—that most of the decisionmaking business of regulatory agencies can and should be open to the public."[7]

As President Ford indicated and the legislative history makes clear, the Sunshine Act was intended to encompass only decision-making and not advisory bodies. *See* Sen.Rep. No. 354, *supra*, at 15; *Washington Research Project, Inc. v. HEW*, 504 F.2d 238, 246–48 (D.C.Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975); *Soucie v. David*, 448 F.2d 1067, 1073–75 (D.C.Cir. 1971).

meetings must be open or that what occurred at the meetings must necessarily be disclosed. Like its predecessor, the Freedom of Information Act, the Sunshine Act also contains a series of exemptions the agency may invoke to prevent disclosure. § 552b(c)(1)–(10).

7. Source Book at 832.

The construction of the statute advanced by defendant reaches an unwarranted result and serves no purpose. "The words of the statute must be read so as to effectuate the legislative purpose. This will often mean giving the words a broad, rather than a narrow, reading." *United States v. Conlon*, No. 79–2283, slip op. at 8, (D.C.Cir. April 16, 1980). In *Zeigler Coal Co. v. Kleppe*, 536 F.2d 398 (D.C.Cir. 1976), this Circuit rejected a strict literal reading of certain provisions of the Federal Coal Mine Health and Safety Act where it would:

> greatly impair the statute's effectiveness as a tool for bringing about improvements in mine health and safety conditions. Congress could hardly have intended this result. The overall remedial purposes of the Act suggest to us that its language should be given a more liberal construction in favor of the broad goals being pursued.

536 F.2d at 405. Even the defendant concedes that it is not necessary to give effect to each word of a statute where it would produce an absurd result. *See United States v. Babcock*, 530 F.2d 1051 (D.C.Cir. 1976).

As the plaintiff's counsel noted, Judge Learned Hand made a similar point some 35 years ago:

> The defendants have no answer except to say that we are not free to depart from the literal meaning of the words, however transparent may be the resulting stultification of the scheme or plan as a whole.
>
> Courts have not stood helpless in such situations; the decisions are legion in which they have refused to be bound by the letter, when it frustrates the patent purpose of the whole statute. . . .

*Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

The Court concludes that the Chrysler Corporation Loan Guarantee Board is an agency within the meaning of the Sunshine Act. The plaintiff has borne his burden of establishing that the several criteria for the issuance of injunctive relief have been met.

*See Washington Metropolitan Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841 (D.C.Cir. 1977); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921 (D.C.Cir. 1958).

This Memorandum Opinion shall constitute the Court's Findings of Fact and Conclusions of Law. Rule 52(a), Fed.R.Civ.P.