**Howard SYMONS**

v.

**CHRYSLER CORPORATION LOAN GUARANTEE BOARD, Appellant.**

No. 80–1599.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 10, 1981.

Decided Dec. 4, 1981.

Frank A. Rosenfeld, Atty., U. S. Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., and Leonard Schaitman, Atty., U. S. Dept. of Justice, Washington, D. C., were on brief, for appellant.

Alan B. Morrison, Washington, D. C., with whom David C. Vladeck and Katherine A. Meyer, Washington, D. C., were on brief, for appellee.

Before McGOWAN, Senior Circuit Judge, and TAMM and WALD, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

In this action the Government challenges the district court's determination that the Chrysler Corporation Loan Guarantee

Board (the Board) is an "agency" required to comply with the open meeting provisions of the Government in the Sunshine Act, 5 U.S.C. § 552b (1976) (Sunshine Act or the Act). Because we conclude that the Board does not fall within the Sunshine Act's definition of "agency," we reverse, 488 F.Supp. 874.

## I. BACKGROUND

### A. The Sunshine Act

In 1976 Congress enacted the Government in the Sunshine Act.[1] The purpose of the Sunshine Act is to provide the public with information regarding the decision-making processes of the Federal Government "while protecting the rights of individuals and the ability of the Government to carry out its responsibilities." Pub.L.No. 94–409, § 2, 90 Stat. 1241 (1976). To effectuate this purpose, the Act requires that every "meeting" of a covered "agency" be open to the public, 5 U.S.C. § 552b(b), with but a few limited exceptions. See 5 U.S.C. § 552b(c)(1)–(10). The Act also mandates the public announcement of meetings, 5 U.S.C. § 552b(e), and the maintenance of a complete transcript or electronic recording of meetings closed under any of the section 552b(c) exemptions. 5 U.S.C. § 552b(f).

The definitions of "meeting" and "agency" in the Sunshine Act are quite specific. The term "meeting" applies only to "the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business ...." 5 U.S.C. § 552b(a)(2). In order to be covered by the Sunshine Act, an "agency" must initially fall within the ambit of the definition found in the Freedom of Information Act (FOIA), 5 U.S.C. § 552(e) (1976),[2] and in addition must be

1. 5 U.S.C. § 552b (1976). For a narrative history of the Sunshine Act, see Government in the Sunshine Act—S.5 (Public Law 94–409), Source Book: Legislative History, Texts, and Other Documents, Comm. on Gov't Operations, United States Senate, and Comm. on Gov't

Operations, U. S. House of Representatives, 94th Cong., 2d Sess. (December 1976) [hereinafter Source Book].

2. For Freedom of Information Act (FOIA) purposes, the term "agency" includes "any executive department, military department, Govern-

"headed by a collegial body composed of two or more individual members, a majority of whom are appointed *to such position* by the President with the advice and consent of the Senate . . . ." 5 U.S.C. § 552b(a)(1) (emphasis added). It is this definition of "agency," and in particular the words "to such position," upon which this case turns.

### B. The Chrysler Corporation Loan Guarantee Board

The Chrysler Corporation Loan Guarantee Act of 1979, 15 U.S.C. §§ 1861 *et seq.* (Supp. III 1979), was enacted to help the Chrysler Corporation avoid bankruptcy by having the United States provide the company with up to $1.5 billion in loan guarantees. The Chrysler Corporation Loan Guarantee Board, established by Congress to administer the loan guarantee program, 15 U.S.C. § 1862, is authorized to make commitments for loan guarantees and to issue such guarantees if it determines that conditions imposed by the Act have been satisfied. 15 U.S.C. §§ 1863, 1864. The Board must make findings and report them to Congress no less than fifteen days prior to issuing any guarantees. 15 U.S.C. §§ 1864(b), 1873(b).

The Chrysler legislation provides that the Board shall be composed of persons holding particular government posts. 15 U.S.C. § 1862. The Secretary of the Treasury chairs the Board; the Chairman of the Board of Governors of the Federal Reserve System and the Comptroller General of the United States are the other voting members, while the Secretaries of Labor and Transportation serve as nonvoting members of the Board. *Id.* Thus, although all Board members have been appointed to some posi-

tion by the President with the advice and consent of the Senate, they were not so appointed to their *Board* positions. Rather, they serve, according to statutory mandate, by virtue of the other offices they hold.

### C. The Instant Litigation

The facts in this case are straightforward and undisputed. Appellee Howard Symons is a staff attorney and lobbyist with Congress Watch, a public interest organization. On April 23, 1980, counsel for Symons sent a letter to the Board demanding that it comply with the Sunshine Act and stating that relief would be sought in federal court if he was not assured that such compliance would ensue. Joint Appendix (J.A.) at 10–11. The Board responded on the following day that it is not an "agency" required to conduct its business within the contours of the Act since none of its members were appointed to their Board positions by the President. J.A. at 12. Symons subsequently filed suit in the United States District Court for the District of Columbia on April 25, 1980, and moved for a temporary restraining order directing the Board to comply with the statutory requirements of the Act pending a decision on the merits.[3] On the same day, the district court issued a temporary order enjoining the Board from holding any meeting in a manner inconsistent with the Sunshine Act provisions. J.A. at 13.

On May 14, 1980, after briefing and argument, the district court issued a final order and accompanying opinion holding that the Board is an "agency" for Sunshine Act purposes and directing the Board to comply with the Act in all respects. J.A. at 27–33. It is this decision, now reported at 488

---

ment corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . or any independent regulatory agency." 5 U.S.C. § 552(e) (1976).

We presume that case law and other authorities under FOIA will govern the initial agency determination in Sunshine Act cases. *See, e.g., Public Citizen Health Research Group v. Department of HEW*, 668 F.2d 537 (D.C.Cir.1981); *Forsham v. Califano*, 587 F.2d 1128 (D.C.Cir. 1978), *aff'd sub nom., Forsham v. Harris*, 445

U.S. 169, 100 S.Ct. 978, 63 L.Ed.2d 293 (1980); *Rocap v. Indiek*, 539 F.2d 174 (D.C.Cir.1976); *Washington Research Project, Inc. v. Department of HEW*, 504 F.2d 238 (D.C.Cir.1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975).

3. The Government in the Sunshine Act (Sunshine Act or the Act), 5 U.S.C. § 552b (1976), gives United States district courts jurisdiction to compel agency compliance with the Act. 5 U.S.C. § 552b(h)(1).

F.Supp. 874 (D.D.C.1980), that the Government appeals.

## II. DISCUSSION

The only issue before this court is whether the Board is an "agency" subject to the provisions of the Sunshine Act. For the purposes of the Act, the term "agency" applies only to federal bodies "headed by a collegial body composed of two or more individual members, a majority of whom are appointed *to such position* by the President with the advice and consent of the Senate . . . ." 5 U.S.C. § 552b(a)(1) (emphasis added). In the Government's view, the phrase "to such position" can refer back only to the term "collegial body." Thus, the Government contends that the Board is not covered by the Act because none of its members were appointed to positions on the "collegial body" (the Board) by the President, as required by the literal terms of the statute. Rather, Board members serve ex officio, by virtue of their appointment, concededly by the President with the advice and consent of the Senate, to *other* high government offices.

The district court rejected the Government's argument, saying it derived from a "crimped, unduly restrictive view of the statute . . . ." 488 F.Supp. at 876. Although the district court implicitly acknowledged that the Board would not be subject to the Act if the phrase "to such position" were accorded its plain meaning, it believed that the broadly remedial nature of the Sunshine Act mandated liberal construction in order to effectuate legislative goals. *Id.* at 876–77. In addition, the trial court stated that in passing the Sunshine Act Congress chose to employ a "broad, all encompassing definition of agency . . . ." *Id.* at 876. The district court could find no hint in the legislative history of *why* Congress included the phrase "to such position" in the definition of "agency":

> The legislative history is silent as to any purpose served by the distinction excluding an agency from the Act's coverage because its members are statutorily appointed following initial Presidential appointment to their principal executive positions as opposed to an agency whose members are individually appointed by the President at the outset.

*Id.* Given this silence in the legislative history and the remedial nature of the Act, the district court did not feel obliged to give effect to the plain meaning of the phrase "to such position." Rather, purporting to effectuate the overriding legislative purpose, the court rejected a literal reading of the statute and held that the Act's definitional threshold was met where the agency members were simply "appointed by the President," even if not to the agency itself.

It is axiomatic that in interpreting any statutory provision our starting point must be the language of the statute itself. *Consumer Product Safety Commission v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Ordinarily, courts will give effect to the plain meaning of the words used by the legislature, and appellee Symons has presented no convincing argument that the phrase "to such position" can be given any plausible construction other than the one urged upon this court by the Government.

We do not quarrel with the district court's characterization of the Sunshine Act as a broadly remedial statute dedicated to the principles of open government deliberations and the public's "right to know." 488 F.Supp. at 876. The fact that legislation has a remedial purpose, however, does not give the judiciary license, in interpreting a provision, to disregard entirely the plain meaning of the words used by Congress. This court has stated in the FOIA context that, even where a statute is broad in scope, proper deference must be paid to the plain meaning rule. *Consumers Union of the United States, Inc., v. Heimann,* 589 F.2d 531, 533 (D.C.Cir.1978).

Although Symons initially suggests that the phrase "to such position" could be read to include presidential appointment to positions other than the "collegial body" itself, Brief for Appellee at 7, he relies primarily on the argument that the phrase

is mere surplusage. Brief for Appellee at 5, 2–9. Such a construction of a statute, however, is not favored by the law and would violate a fundamental rule of statutory interpretation—that in construing statutes courts should give effect, if possible, to every word used by Congress. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979).

Symons attempts to bolster his surplusage argument by pointing out the dearth of legislative history on the meaning of the disputed phrase. He contends that if "to such position" were intended to have a major impact on the scope of the definition of "agency," Congress would have elaborated upon it somewhere in the legislative history. Thus, Symons reasons, it is probable that Congress did not ascribe any particular meaning to the phrase, and therefore neither should courts. Brief for Appellee at 8–9, 15–24.

We do not, however, attribute any special significance to the legislative history's silence in this regard. Drawing inferences as to congressional intent from silence in legislative history is always a precarious business. Here, for example, the absence of any explanatory reference to the phrase in floor debates and committee reports could well evince Congress' feeling that the language employed was so clear as not to require elaboration. In any event, appellee's theory of statutory interpretation would allow courts to read out of a statute an unambiguous phrase when no explanation of it exists in the legislative history. This is, in our view, a unique principle of statutory construction, and one we cannot embrace.

■ We recognize, of course, that in interpreting legislation courts are not straitjacketed by Congress' choice of words. When the language used so conflicts with

evidenced congressional intent that a mistake in draftsmanship is obvious, courts may remedy the mistake. *See . United States v. Babcock*, 530 F.2d 1051, 1053 (D.C. Cir.1976). In this case, however, there is no evidence of mistake or contrary legislative intent that persuades us to ignore the plain meaning of the statute's words. As the Supreme Court has recently reaffirmed, "[a]bsent a clearly expressed legislative intention to the contrary, [the language of the statute] must ordinarily be regarded as conclusive." *Consumer Product Safety Commission*, 447 U.S. at 108, 100 S.Ct. at 2056.

Moreover, there is one piece of legislative history that suggests Congress contemplated that the phrase "to such position" would be given the meaning ascribed to it by the court today. Congresswoman Bella Abzug, who chaired the subcommittee of the House Government Operations Committee that initially reported the Sunshine Act, testified before a subcommittee of the House Judiciary Committee that agencies whose members serve in an ex officio capacity would not be subject to the Sunshine Act.[4] Specifically, in answer to a question asked by Representative Thomas Kindness, Ms. Abzug stated that the National Security Council would not be covered by the Act because its members were not appointed to the Council by the President, but rather were appointed to other offices and served on the Council ex officio.[5]

■ We recognize that "[t]he remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history," *Chrysler Corp. v. Brown*, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979), and we therefore disagree with the Government's assertion that Ms. Abzug's testimony is "controlling" in this case. Reply Brief for Appellant at 8. The testimony is, how-

---

4. After the bill cleared Ms. Abzug's Subcommittee on Government Information and Individual Rights and was reported by the full Committee on Government Operations, it was referred to the Committee on the Judiciary, whose Subcommittee on Administrative Law and Governmental Relations held further hearings on the bill. *See* Source Book at pp. 3–4.

5. *Government in the Sunshine Act: Hearings on H.R. 11656 Before the Subcomm. on Administrative Law and Gov't Relations of the House Comm. on the Judiciary*, 94th Cong., 2d Sess. 16 (1976).

ever, some evidence of Congress' views regarding the applicability of the Sunshine Act to ex officio agencies and is entitled to more weight than Symons suggests.[6] Brief for Appellee at 27–29. This is particularly true since Ms. Abzug was a primary supporter of Sunshine legislation for many years and chaired the House subcommittee that originally considered the bill. It is also significant that the view expressed by the Congresswoman in her testimony is not controverted anywhere in the legislative history.

Other government offices have interpreted the disputed phrase in a manner consistent with Ms. Abzug's testimony in at least two instances. The Department of Justice has taken the position, in a nonlitigation context, that members who serve on an agency ex officio are not presidential appointees in the sense contemplated by the Sunshine Act's definition of "agency" because their appointment was not to *such* position, *i.e.*, on the collegium.[7] The Federal Open Market Committee (FOMC) has concluded that it is not a covered agency for the same reason. 12 C.F.R. § 281.2 (1981). Although we recognize that these government interpretations are, to some degree, self-serving, particularly in the FOMC's case, they do represent previous consistent constructions of the Act and therefore provide additional support for the reading given to the statute today.

We do not find persuasive the assertion by the district court and appellee that in enacting the Sunshine Act Congress adopted a "broad, all encompassing definition of agency." 488 F.Supp. at 876. We think it is clear from the face of the Act that Congress chose a more narrow definition of "agency" than suggested by appellee and the trial court. Although the Act uses as a foundation the general "agency" definition found in the FOIA, Congress chose further to restrict Sunshine coverage to particular types of agencies. The Act clearly does not apply to agencies headed by a single individual, and Congress failed to act on an early version of the legislation that would have made all agencies having more than one member subject to the Act, without regard to method of appointment.[8]

Although there are very few cases that discuss the term "agency" in the Sunshine context, and none that discuss the particular language at issue here, the United States Court of Appeals for the Tenth Circuit has recognized that "agency" as used in the Sunshine Act is not a broad term.

> In this statute we are not concerned with an "agency" in the broad sense of that word. The statute itself limits the Sunshine Act to any agency headed by a collegial body, a majority of whose members are appointed by the President with the advice and consent of the Senate. That is the only type of an agency covered by the Act.

*Hunt v. NRC*, 611 F.2d 332, 336 n.2 (10th Cir. 1979), *cert. denied*, 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980).[9]

---

**6.** As the district court noted, the Sunshine Act was not intended to encompass entities that perform primarily advisory, as opposed to decision making, functions. 488 F.Supp. at 876. Symons argues that the value of Ms. Abzug's testimony is reduced because the National Security Council could be excluded from Sunshine coverage on the ground that it is an advisory body. Brief for Appellant at 27–28. We do not believe that the existence of an alternate ground on which Ms. Abzug could have relied for excluding the Council makes her comments on the meaning of the disputed phrase any less significant.

**7.** The Justice Department articulated this position in response to a request by an ex officio agency—the now-defunct Federal Labor Relations Council—for an opinion regarding its status under the Sunshine Act. *See* letter of Oct. 22, 1976, from Harold D. Kessler, Acting Executive Director of the Federal Labor Relations Council, to Antonin Scalia, Assistant Attorney General, Office of Legal Counsel, Joint Appendix (J.A.) at 21–24; letter of Oct. 27, 1976, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, to Mr. Kessler, J.A. at 25–26.

**8.** *Compare* S.3881, § 5, 92nd Cong., 2d Sess. (1972), Source Book at 24, *with* the language ultimately adopted by Congress, 5 U.S.C. § 552b(a)(1).

**9.** In *Hunt*, the issue was whether the Sunshine Act applied to an adjudicatory hearing before the Atomic Safety and Licensing Board. The

It is true, as noted by the district court, that Congress preferred a statutory definition to a restrictive listing of covered agencies. 488 F.Supp. at 876. The idea of listing covered agencies in the Act was rejected, however, not because Congress wanted a broad definition of "agency," but out of fear that an agency might inadvertently be omitted when the list was compiled, and to avoid the need for amending the statute each time a new agency was created. *See House Hearings* at 9–10 (testimony of Rep. Fascell); *see also* 122 Cong.Rec. 24213–14 (1976) (remarks of Reps. Kindness, Abzug, and Flowers).

Although the idea of listing covered agencies was ultimately rejected by Congress for the reasons just stated, both the Senate Report and the House Judiciary Report set forth what Congress believed was a complete list of entities that would be covered by the bill's definition of "agency." [10] It should be noted that not one of the forty-seven agencies listed had a majority of ex officio members. Each one had a majority of persons who were appointed by the President to the agency itself. Appellant points out that such ex officio agencies as the Federal Open Market Committee, the Federal Labor Relations Council, and the Emergency Loan Guarantee Board, which performed a task for Lockheed similar to the one performed by the Board for Chrysler in the present case, were not listed. *See* Brief for Appellant at 18. We agree with appellant that it is unlikely that Congress would have overlooked an entire category of agencies it wished to subject to the Act. We therefore view the failure to list any ex

officio agency as additional, although certainly not conclusive, evidence that Congress did not contemplate their inclusion in the definition of "agency."

The district court held that it could reject a literal reading of a statute if such a reading would "produce an absurd result," 488 F.Supp. at 877, *citing United States v. Babcock*, 530 F.2d 1051, 1053 (D.C.Cir.1976); "greatly impair the statute's effectiveness," 488 F.Supp. at 877, *quoting Zeigler Coal Co. v. Kleppe*, 536 F.2d 398, 405 (D.C.Cir.1976); or result in "stultification of the scheme or plan as a whole," 488 F.Supp. at 877–78, *quoting Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). Although we heartily agree with the basic premises stated by the district court, we believe they were misapplied in the instant case. The consequences of giving effect to the plain meaning of the words used by Congress here are not nearly as Draconian as in the cases cited by the district court.[11] We are not persuaded that our interpretation of the language will undermine the aims of the Sunshine Act in the manner suggested by Symons. Brief for Appellee at 38. As noted above, many government agencies are excluded by definition from Sunshine Act coverage. If Congress wanted to subject the Board to the provisions of the Act, it could have so provided when the Board was established. In fact, shortly after creating the Chrysler Board, Congress established the Depository Institutions Deregulation Committee, another agency whose members serve ex officio.[12] The legislation creating

court's discussion of the term "agency" arose in the context of determining whether the phrase "any subdivision thereof" as used in 5 U.S.C. § 552b(a)(1) means any subdivision of a "collegial body" or any subdivision of an "agency." *Hunt v. NRC*, 611 F.2d 332, 336 n.2 (10th Cir. 1979), *cert. denied*, 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980).

10. *See* S.Rep.No.354, 94th Cong., 1st Sess. 15–16 (1975), *reprinted in* Source Book at 210–11; H.R.Rep.No.880, Part 2, 94th Cong., 2d Sess. 13–14 (1976), U.S.Code Cong. & Admin.News 1976, p. 2183, *reprinted in* Source Book at 563–64.

11. We agree with appellant that there are significant distinctions between this case and the cases cited by the district court. Brief for Appellant at 20, n.8. Appellee has made no attempt to refute these distinctions.

12. *See* The Depository Institutions Deregulation Act of 1980, Pub.L.No.96–221, Title II, 94 Stat. 142, 12 U.S.C.A. §§ 3501 *et seq.* (1980). Voting members of the Committee are the Secretary of the Treasury, the Chairman of the Board of Governors of the Federal Reserve Board, and the chairmen of other banking agencies. The Comptroller of the Currency is a nonvoting member of the Committee. 12 U.S. C.A. § 3502(b).

this entity explicitly provided that it would be subject to the requirements of the Sunshine Act.[13] This suggests that when Congress wishes to extend Sunshine coverage to ex officio agencies, it will do so.

## III. CONCLUSION

For the reasons noted above, we hold that the Chrysler Corporation Loan Guarantee Board is not an "agency" as defined by the Government in the Sunshine Act. The terms of the definition are clear, and there is no evidence in the legislative history suggesting that Congress did not intend that the plain meaning of the words be given effect. It may be that exclusion of the Board and similar government entities from Sunshine coverage runs counter to the spirit of the Act, but, in the final analysis, the words of the statute must control. Arguments that this result is unfortunate should be addressed to Congress rather than to the

13. "All meetings of the Deregulation Committee shall be conducted in conformity with the provisions of section 552b of Title 5." 12 U.S.C.A. § 3502(b).

1. 5 U.S.C. § 552b(c)(1)–(10) provides that

Except in a case where the agency finds that the public interest requires otherwise, the second sentence of subsection (b) shall not apply to any portion of an agency meeting, and the requirements of subsections (d) and (e) shall not apply to any information pertaining to such meeting otherwise required by this section to be disclosed to the public, where the agency properly determines that such portion or portions of its meeting or the disclosure of such information is likely to—

"(1) disclose matters that are (A) specifically authorized under criteria established by an Executive order to be kept secret in the interests of national defense or foreign policy and (B) in fact properly classified pursuant to such Executive order;

"(2) relate solely to the internal personnel rules and practices of an agency;

"(3) disclose matters specifically exempted from disclosure by statute (other than section 552 of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

courts. Accordingly, the judgment of the district court is reversed.

*It is so ordered.*

WALD, Circuit Judge, dissenting:

The Government in the Sunshine Act, 5 U.S.C. § 552b (1976) ("Sunshine Act"), was enacted to provide the public with "the fullest practicable information regarding the decisionmaking processes of the Federal Government . . . while protecting the rights of individuals and the ability of Government to carry out its responsibilities." Pub. L.No.94–409, § 2, 90 Stat. 1241 (1976). To fulfill this design, every meeting of an agency covered by the Sunshine Act must be open to the public except when a majority of the agency's members determines that its meeting or any part of its meeting is likely to reveal matters which Congress had determined ought not be disclosed prematurely, such as national security, internal personnel practices, or pending litigation.[1]

"(4) disclose trade secrets and commercial or financial information obtained from a person and privileged or confidential;

"(5) involve accusing any person of a crime, or formally censuring any person;

"(6) disclose information of a personal nature where disclosure would constitute a clearly unwarranted invasion of personal privacy;

"(7) disclose investigatory records compiled for law enforcement purposes, or information which if written would be contained in such records, but only to the extent that the production of such records or information would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;

"(8) disclose information contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions;

"(9) disclose information the premature disclosure of which would—

Agencies subject to the Sunshine Act are those

> headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate.

5 U.S.C. § 552b(a)(1). A generic definition of agency was used in the law instead of a specific list of agencies so that qualifying subsequently-constituted agencies would automatically be covered by the Act. *See* Government in the Sunshine Act—S.5 (Public Law 94–409), Source Book: Legislative History, Texts, and Other Documents, Comm. on Gov't Operations, United States Senate, and Comm. on Gov't Operations, U. S. House of Representatives, 94th Cong., 2d Sess. (December 1976) [hereinafter Source Book]. Neither advisory committees, *id.* at 210, nor collegial bodies of a subordinate nature, *Hearings Before the Subcommittee on Reorganization of the Committee on Government Operations, United States Senate, on S. 260*, 93d Cong., 2d Sess. 245 (1975), were meant to be included in the Act. Otherwise, the definition was intended to be a broad one.[2]

The question in this case is whether the members of the Board constituted by the Chrysler Corporation Loan Guarantee Act, 15 U.S.C. §§ 1861 *et seq.* (Supp. III 1979) ("Chrysler Act"), were appointed "to such position by the President with the advice and consent of the Senate." The Chrysler Corporation Loan Guarantee Board ("Chrysler Board" or "Board") is *statutorily* composed of the Secretary of the Treasury, who serves as Chairman of the Board, the Chairman of the Board of Governors of the Federal Reserve System, and the Comptroller General of the United States—officials who are appointed by the President with the advice and consent of the Senate. In addition, the Secretary of Labor and the Secretary of Transportation, also appointed and confirmed officials, are designated *ex officio* nonvoting members of the Board.

The majority finds the statutory language "clear" and so, relying primarily upon the "plain meaning doctrine," holds that the Sunshine Act is inapplicable to the Chrysler Board. That reading of the statute is, I believe, overly simplistic and, in the context of the facts here, unjustified. While the language of the Sunshine Act might seem clear on first reading, it carries with it a substantial ambiguity when applied in this case. Simply put, it seems to me that when appointed and confirmed officials are statutorily required to serve as a majority of members on a high-level, decisionmaking, collegial body, the definition of "agency" under the Sunshine Act is satisfied.

The Chrysler Act *requires* the Secretary of the Treasury and other appointed and confirmed officials to serve on the Board. Having been appointed and confirmed to

---

"(A) in the case of an agency which regulates currencies, securities, commodities, or financial institutions, be likely to (i) lead to significant financial speculation in currencies, securities, or commodities, or (ii) significantly endanger the stability of any financial institution; or

"(B) in the case of any agency, be likely to significantly frustrate implementation of a proposed agency action.

except that subparagraph (B) shall not apply in any instance where the agency has already disclosed to the public the content or nature of its proposed action, or where the agency is required by law to make such disclosure on its own initiative prior to taking final agency action on such proposal; or

"(10) specifically concern the agency's issuance of a subpena, or the agency's participation in a civil action or proceeding, an action in a foreign court or international tribunal, or an arbitration, or the initiation, conduct, or disposition by the agency of a particular case of formal agency adjudication pursuant to the procedures in section 554 of this title or otherwise involving a determination on the record after opportunity for a hearing.

**2.** *See* Source Book at 212:

While many of those [agencies] covered are regulatory, others have more general policy-making roles. The decisions of one may involve no less important policy questions than the decisions of the other. Opening one type of meeting to the public is as important as opening another type. The notion of including some multiheaded agencies . . . and excluding others would do violence to the fundamental purpose of the legislation, which is open Government to the people wherever and whenever possible.

one of the offices enumerated in the Act, each of those individuals *must* serve on the Chrysler Board. An appointment to head the Treasury Department is also an appointment to chair the Chrysler Board. When Donald Regan was appointed and confirmed as Secretary of the Treasury, he was simultaneously appointed and confirmed as Chairman of the Chrysler Board. Hearings on his appointment naturally included questions about the Chrysler "bailout." *See e.g., Hearings Before the Senate Committee on Finance on the Nomination of Donald T. Regan To Be Secretary of the Treasury,* 97th Cong., 1st Sess., 12–13 (January 6, 1981). If, for example, Secretary Regan were replaced as Secretary of the Treasury by the President, he could not continue to serve as Chairman of the Chrysler Board. His replacement as Secretary of the Treasury would be required to serve as Chairman of the Chrysler Board. The President could not replace Secretary Regan with someone to serve as Secretary of the Treasury and someone else to serve as Chairman of the Chrysler Board, for the latter position is a necessary part of the duties of the former position. This reading of the statute is not undercut by the fact that the first Chairman of the Chrysler Board was already serving as Secretary of the Treasury at the time the Chrysler Act was passed. Clearly it is contemplated that, during the tenure of an appointed and confirmed official, that official might be required to discharge duties assigned by subsequently enacted legislation. *Cf. Shoemaker v. United States,* 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170 (1893) (Congress may increase the powers and duties of an appointed and confirmed officer without rendering it necessary that the officer be again appointed and confirmed). Thus, the members of the Chrysler Board, by virtue of their appointment and confirmation to the positions enumerated in the Chrysler Act, are appointed and confirmed to that Board and so meet the requirement of the Sunshine Act set by the words "to such position."

The only legislative history available to suggest any other interpretation is testimony before the House Judiciary Committee by Representative Bella Abzug, who chaired the House Government Operations Committee which reported out the House version of the Sunshine Act. In response to Representative Kindness' question about whether the National Security Council was to be covered by the bill, Representative Abzug answered:

No; I don't think they are because they're not appointed to that position by the President.

You see, I think that the answer to that is that they are appointed to other positions and that they are ex officio members and that the NSC is not a subsidiary of a covered agency. And I'm looking at section 552b(b) which gives us the definition—I don't know if you have the act in front of you, I mean, the bill—but in any case the term "agency" means "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate."

I think the definition itself is clear, I mean, I had to stop and think for a minute. I think the definition gives you an answer for almost any agency that you have. I don't think there's any problem with the generic definition.[3]

---

3. The colloquy continued:
   Mr. KINDNESS: In that specific case, the reasoning there would be that the people who serve on that Council, the National Security Council, are appointed by the President—
   Ms. ABZUG: They serve their—they are appointed to another office. And they serve here as ex officio.
   Mr. KINDNESS: And not appointed to such positions?

   Ms. ABZUG: That's correct.
   Mr. KINDNESS: I submit there may be some room for questions there. But the Domestic Council and the Council on Environmental Quality fall in about the same category, I think, then.
   Ms. ABZUG: We would simply take the definition of "appointment" and see how they're appointed.
   *Hearings on H.R.11656 Before the House Subcommittee on Administrative Law and Govern-*

The majority acknowledges that the remarks of a single legislator are not controlling in analyzing legislative intent. Nevertheless, it embraces the remarks of Representative Abzug for the support those remarks provide. I cannot, however, accord the remarks any significant weight. Nowhere else in the legislative history is there any indication of Congressional intent to exclude from the purview of the Sunshine Act high-level, policymaking bodies, composed of statutorily designated appointed and confirmed officers. Further, nowhere in the legislative history can there be found any reason for distinguishing bodies whose appointed and confirmed members were statutorily designated from those whose members are appointed and confirmed separately for the collegial body on which they serve. Although courts, in construing Congressional intent, ought not attempt to probe the motives behind statements made by legislators, they should not be blind to confusion or error in such statements. In this case, Representative Abzug was obviously casting about for a quick answer to soothe the apprehensions of a colleague concerned that the sensitive discussions of the National Security Council would be exposed to public view by the Sunshine Act. Representative Abzug could have answered simply that the National Security Council was not subject to the Sunshine Act because it is an advisory body. Instead, she took a position with which neither proponents nor opponents of the Act had any need to take issue at the time (although, as appears from the exchange, Representative Kindness was not altogether persuaded by the position). The testimony consequently offers little insight into Congressional intent. Without any reliable legislative history to inform our choice between two reasonable constructions of the statutory language, we must look to the spirit and goal of the two Acts for guidance.

The majority admits that its position "may ... run counter to the spirit of the [Sunshine] Act." At 245. It undoubtedly does. As noted above, the Act was designed to encompass all multi-member, high-level, policymaking bodies, a majority of whose members were appointed and confirmed to the body. The history of the Chrysler Board legislation strongly suggests that it is precisely the kind of agency that Congress meant to subject to the Act. *See, e.g.,* 125 Cong.Rec. H10621 (daily ed. Nov. 13, 1979) (remarks of Rep. Hinson, Rep. Bethune and Rep. Shumway); *see also* S.Rep.No.96–463, 96th Cong., 1st Sess. 17 (1979). Surely the public, whose funds are being expended to save the Chrysler Corporation from bankruptcy is entitled to the "fullest practicable information" regarding its investment.[4] While section 14 of the Chrysler Act, 15 U.S.C. § 1873, requiring regular reports to Congress, provides a limited mandate for disclosure, compliance with the Sunshine Act's requirement of open meetings accomplishes a far broader remedial purpose of keeping the public informed. And the exemption provided by section 3(c)(9)(A) of the Sunshine Act, 5 U.S.C. § 552b(c)(9)(A), for partial closings when premature disclosure would upset the

---

*ment Relations of the Committee on the Judiciary,* 94th Cong., 2d Sess. 16 (1976).

**4.** Congressional concern for the risk the American taxpayer was being asked to take was evidenced throughout the floor debates. *See, e.g.,* 125 Cong.Rec. H12204 (daily ed. Dec. 18, 1979) (remarks of Rep. Stanton) ("In petty arguments about whether or not it is the Secretary of Transportation or the Secretary of Labor, we can stand up here all night and give arguments that it should be the Secretary of Commerce, that it is his business, that this affects small business or something, and that the Secretary of Commerce should be there as well as the Secretary of Labor. We can keep this up all night. For those who are so anxious

to get home for Christmas and to get this subject out of the way, truthfully, I hope that they could give control to someone who would be a meaningful participant and do the best for my taxpayers and the gentleman's taxpayers to protect their money."); *id.,* S. 19165 (remarks of Senator Bellmon) ("I urge Members to be very careful and not jump into something where we think we are doing a company a service when, in fact, we are doing an enormous disservice to the American taxpayer."); *id.,* at S. 19201 (remarks of Senator Gravel) ("Another of my concerns with this bill is the risk the Congress proposes to take with taxpayers' dollars.").

securities markets, alleviates any fear that sunshine will fall on areas that require cover to insure the public interest. Note that the Federal Reserve Board and the Securities and Exchange Commission, agencies that deal regularly with sensitive financial matters, are included within the Sunshine Act. *See* Source Book at 211.

In sum, I find that neither the plain language, the legislative history, nor the spirit of the Act command the decision of the majority. I would affirm the district court, and therefore I dissent.