# MARKETING LOANS FOR GRAINS AND WHEAT

The formulas in the Food, Agriculture, Conservation, and Trade Act of 1990, under which farmers repay loans from the Department of Agriculture, contain a scrivener's error in the organization of the subsections, and the provisions should be read as if the error, which arose in the process of enrollment, had not been made.

Under section 1302 of the Omnibus Budget Reconciliation Act of 1990, marketing loan provisions that previously had been discretionary would be mandatory for the 1993 through 1995 crop years, if an agricultural trade agreement under the Uruguay Round Negotiations pursuant to the General Agreement on Tariffs and Trade were not entered into by June 30, 1992, or if this agreement had not entered into force for the United States by June 30, 1993.

June 3, 1992

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF AGRICULTURE

You have requested our views concerning the proper reading of two provisions of the Food, Agriculture, Conservation, and Trade Act of 1990. These provisions prescribe formulas governing repayment of marketing loans for feed grains and wheat for the 1991 through 1995 crop years. As explained in more detail below, we concur in your opinion that the provisions should be given the reading that ignores a likely typographical error in the process of enrollment. We also agree with your reading of a provision of the Omnibus Budget Reconciliation Act of 1990.

## I.

The Food, Agriculture, Conservation, and Trade Act of 1990 ("1990 Act"), Pub. L. No. 101-624, 104 Stat. 3359, established the most recent five-year plan of federal price support and acreage reduction programs for numerous agricultural commodities. The 1990 Act added new sections 105B and 107B to the Agricultural Act of 1949 ("1949 Act"), governing the 1991 through 1995 crops of feed grains and wheat, respectively. See 1990 Act, §§ 301(3), 401(3), 104 Stat. at 3382-3419.[1] Both sections contain "marketing loan provisions," which include formulas for repayment of loans made to farmers by the Department of Agriculture ("USDA"). Section 105B(a)(4)(A) provides:

---

[1] Sections 105B and 107B are codified at 7 U.S.C. §§ 1444f, 1445b-3a (Supp. II 1990), respectively.

The Secretary [of Agriculture] may permit a producer to repay a loan made under this subsection for a crop at a level (except as provided in subparagraph (C)) that is the lesser of —

(i) the loan level determined for the crop;

(ii) the higher of —

(I) 70 percent of such level;

(II) if the loan level for a crop was reduced under paragraph (3), 70 percent of the loan level that would have been in effect but for the reduction under paragraph (3); or

(iii) the prevailing world market price for feed grains (adjusted to United States quality and location), as determined by the Secretary.[2]

The marketing loan provisions that governed the 1986 through 1990 crops of feed grains provided as follows:

The Secretary may permit a producer to repay a loan made under paragraph (1) or (6) for a crop at a level that is the lesser of —

(i) the loan level determined for such crop; or

(ii) the higher of —

(I) 70 percent of such level;

(II) if the loan level for a crop was reduced under paragraph (3), 70 percent of the loan level that would have been in effect but for the reduction under paragraph (3); or

(III) the prevailing world market price for feed grains, as determined by the Secretary.

1949 Act, § 105C(a)(4)(A), *as added by* Food Security Act of 1985 ("1985 Act"), § 401, Pub. L. No. 99-198, 99 Stat. 1354, 1396 (codified at 7 U.S.C. § 1444e(a)(4)(A) (1988)).[3]

---

[2] Section 107B(a)(4)(A) is identical except that it refers in (iii) to the prevailing world market price for *wheat.* For the sake of brevity, we will discuss section 105B as a proxy for both provisions.

[3] Again, the provision governing wheat was substantially identical. *See* 1949 Act, § 107D(a)(5)(A), *as added by* 1985 Act, § 308, 99 Stat. at 1384 (codified at 7 U.S.C. § 1445b-3(a)(5)(A) (1988)).

The relevant textual differences between the loan repayment formulas of the 1985 Act and the 1990 Act are slight. In the 1985 Act, the "world market price" factor is headed by "(III)" and is indented so as to be part of clause (ii). In the 1990 Act, the same factor is headed by "(iii)" and is not indented, appearing to make it a clause parallel with clauses (i) and (ii), rather than part of (ii). The 1985 Act thus has two clauses with the second clause containing three subclauses, while the 1990 Act has three clauses, the second of which contains two subclauses. Moreover, the two clauses of the 1985 Act, as well as the three subclauses of clause (ii), are arranged with the connective "or" preceding the ultimate clause and subclause. In the 1990 Act, no "or" appears before clause (ii) or before subclause (II) of clause (ii).

Although the textual difference is small, you have informed us that the effect is to make a striking change in the marketing loan repayment formula. USDA estimates that if what appears to be denominated clause (iii) in the 1990 Act is indeed a separate clause, instead of being a third subclause of clause (ii), the federal treasury would lose some $3 billion per year in the form of reduced loan repayments by producers of feed grains and wheat.

### III.

Based upon your detailed understanding of USDA's marketing loan programs as implemented by the 1985 and 1990 Acts and your knowledge of the legislative process preceding enactment of the 1990 Act, you have opined that the change in the denomination of the prevailing world market price factor from "(III)" to "(iii)" resulted from an error in the enrollment of the 1990 Act. On this basis, you conclude that USDA should disregard the error and should treat the feed grains and wheat loan repayment formulas of the 1990 Act as having a structure identical to those of the 1985 Act. On the basis of the materials that you have provided us, we concur in your conclusions.

We examine first the text of section 105B(a)(4)(A). It is apparent that this provision contains a grammatical error: if provision (iii) is a separate clause, the word "or" is missing from the end of subclause (ii)(I). This is consistent with the supposed scrivener's error in transforming what should have been subclause (ii)(III) into clause (iii). Clause (ii)(I) would not have needed a final "or" if it had been only the first of three, rather than two, subclauses in clause (ii). It is also true that if provision (iii) is read to be a subclause of clause (ii), the word "or" is missing from the end of clause (i). The fact that section 105B(a)(4)(A) contains a grammatical error, however read, suggests that we approach the text with more caution than usual.

An examination of the sense of section 105B(a)(4)(A) demonstrates that such additional caution is warranted. As enrolled, the loan repayment formula is seriously flawed as a matter of logic. The output of clause (ii) — the number that results from taking the "higher of" subclauses (ii)(I) and

116

(ii)(II) — will always be less than the output of clause (i).[4] The result is that clause (i) will *never* be the "lesser of" the three clauses and thus will never be the output of the loan repayment formula. Section 105B(a)(4)(A) is essentially saying: choose the lesser of A, B, and C — but B is analytically always less than A, so never choose A. In this scheme, clause (i) — that is, choice A — is superfluous.

By contrast, if clause (iii) had been enrolled as subclause (ii)(III), as in the 1985 Act, there would be no such·absurdity in the loan repayment formula of section 105B. Depending on the world market price, sometimes the output of clause (ii) would be less than the output of clause (i), sometimes not. If the market price were high, the output of clause (ii) would be high, and the output of clause (i) could be the lesser of the two. Clause (i) would not be superfluous.

There is at least one other textual indication that section 105B(a)(4)(A) has suffered a scrivener's error. The provisions governing upland cotton and rice — the only other commodities in the 1990 Act with similar marketing loan provisions — have loan repayment formulas akin to the 1985 Act, rather than to section 105B(a)(4)(A) as enrolled. The loan repayment formula for rice, for example, provides:

> In order to ensure that a competitive market position is maintained for rice, the Secretary shall permit a producer to repay a loan made under paragraph (1) for a crop at a level that is the lesser of —
>
> (i) the loan level determined for the crop; or
>
> (ii) the higher of —
>
> (I) the loan level determined for the crop multiplied by 70 percent; or
>
> (II) the prevailing world market price for rice as determined by the Secretary.

---

[4] As to subclause (ii)(I), this statement is true because seventy percent of a positive quantity will always be less than that quantity (here, "the loan level determined for the crop").

As to subclause (ii)(II), this statement is true because of the other provisions of section 105B(a). Paragraphs (1) and (2) direct the Secretary to make feed grain marketing loans available at a level ("Original Level") to be determined by him according to specified criteria. Paragraph (3)(A) allows the Secretary to reduce the Original Level by an amount not to exceed ten percent under certain conditions. Paragraph (3)(B) allows the Secretary, upon making certain determinations, to reduce the Original Level further by an amount not to exceed ten percent. Thus, paragraph (3) as a whole allows the Secretary to reduce the Original Level by as much as twenty percent, but not more. This "Reduced Level" — if the Secretary actually makes the reductions — becomes "the loan level determined for the crop" specified in clause (i) of the repayment formula.

If we assume an Original Level of 100, the Reduced Level may be as low as 80, but not lower. Any number between 80 and 100 is always higher than 70, which is seventy percent of the Original Level, that is, the quantity specified in subclause (ii)(II). Subclause (ii)(II), then, also will always have a lower output than clause (i). Clause (ii) as a whole, therefore, will always have a lower output than clause (i), because its output will be the higher of two quantities, each of which is lower than clause (i).

1949 Act, § 101B(a)(5)(A), *as added by* 1990 Act, § 601, 104 Stat. at 3443 (codified at 7 U.S.C. § 1441-2(a)(5)(A) (Supp. II 1990)). The loan repayment formula for cotton is nearly identical. *See* 1949 Act, § 103B(a)(5)(A)(i), *as added by* 1990 Act, § 501, 104 Stat. at 3423 (codified at 7 U.S.C. § 1444-2(a)(5)(A)(i) (Supp. II 1990)).[5]

In sum, from our textual analysis, we have determined that the feed grains and wheat loan repayment formulas of the 1990 Act are different from their predecessors in the 1985 Act — and from their upland cotton and rice counterparts — only in matters of capitalization of three letters, indentation of one subclause, and the use of "or;" and that the 1990 Act formulas as enrolled are grammatically and logically flawed. These determinations enable us to concur with your opinion that sections 105B(a)(4)(A) and 107B(a)(4)(A) ought to be given the reading closest to their text that makes logical sense: provision (iii) should be treated as a third subclause of clause (ii).

## III.

The legislative history of the passage and enrollment of the 1990 Act is consistent with this conclusion. The House and the Senate passed different versions of the 1990 Act and proceeded to conference to work out their disagreements. The feed grains and wheat marketing loan repayment formulas were among the issues to be worked out. As to feed grains, the report of the Conference Committee stated:

(2) Loan Repayment

*(a) In General*

The Senate bill states that the Secretary shall permit a producer to repay a feed grains price support loan for a crop at the lesser of —

(1) the loan level determined for the crop; or

(2) the prevailing world market price for the crop. (New Section 105A(a)(3))

The House amendment states that the Secretary may allow a producer to repay a loan at a level that is the lesser of —

---

[5] In the formulas for both rice and cotton, the "prevailing world market price" factor is one of only two, rather than three, factors in the second clause, because the formulas do not have a factor referring to an unreduced loan level.

The title of the 1990 Act governing oilseeds has a marketing loan provision, but its repayment formula has only two factors —loan level and world market price. The formula is therefore not susceptible to the same kind of scrivener's error. *See* 1949 Act, § 205(d)(1)(A), *as added by* 1990 Act, § 701(2), 104 Stat. at 3457 (codified at 7 U.S.C. § 1446f(d)(1)(A) (Supp. II 1990)).

(1) the loan level determined for the crop; or

(2) the higher of 70 percent of the loan level for the crop, or 70 percent of the loan level that would have been in effect but for the reduction provided for above (if the loan level for the crop was reduced), or the prevailing world market price for feed grains, as determined by the Secretary. (New Section 105A(a)(4))

*The Conference substitute adopts the House provision.*

H.R. Conf. Rep. No. 916, 101st Cong., 2d Sess. 785 (1990) (final emphasis added), *reprinted in* 1990 U.S.C.C.A.N. 5286, 5310.[6]

The House provision subsumed the prevailing world market price factor under what became clause (ii) in the enrolled bill, rather than making it a clause in its own right. The enrolled version of section 105B(a)(4)(A) does not in fact implement the decision of the conference committee to adopt the House version of the repayment formula.

It is always possible, however, that the printed report of the conference committee is itself in error. It may be that the conference actually adopted the *Senate's* version. We find this possibility less plausible than the likelihood of an enrollment error. In the first place, as enrolled, section 105B(a)(4)(A) is certainly not the Senate's version. Second, the enrolled repayment formula bears the paragraph number of the House's version — "New Section 105A(a)(4)" — rather than the paragraph number of the Senate's version — "New Section 105A(a)(3)."[7]

## IV.

You also have requested that we confirm your opinion that the effect of section 1302 of the Omnibus Budget Reconciliation Act of 1990 ("OBRA"), Pub. L. No. 101-508, 104 Stat. 1388, 1388-12 to -13, is to make the discretionary marketing loan provisions of sections 105B(a)(4)(A) and 107B(a)(4)(A) mandatory for the 1993 through 1995 crop years if an agricultural trade agreement under the Uruguay Round Negotiations conducted

---

[6] Again, the passage discussing loan repayments for wheat is identical in all relevant respects. *See id.* at 773-74, *reprinted in* 1990 U.S.C.C.A.N. at 5298-99.

[7] Some judicial decisions may support overlooking a scrivener's error in the enrollment of a bill. In 1974, the Supreme Court stated that "'we must allow ourselves some recognition of the existence of sheer inadvertence in the legislative process '" *Cass v. United States*, 417 U.S. 72, 83 (1974) (quoting *Schmid v. United States*, 436 F.2d 987, 992 (Ct. Cl. 1971) (Nichols, J., dissenting)). The D.C. Circuit stated in 1981 that when "a mistake in draftsmanship is obvious, courts may remedy the mistake." *Symons v. Chrysler Corp. Loan Guar. Bd.*, 670 F.2d 238, 242 (D C. Cir. 1981). *See also Independent Ins. Agents of Am., Inc. v. Clarke*, 955 F.2d 731, 737 (D.C. Cir. 1992).

under the General Agreement on Tariffs and Trade ("GATT") is not entered into by June 30, 1992. Section 1302(b)(3) of OBRA provides that if the condition set out in section 1302(a) — entering into a GATT agreement — is not met, the Secretary "shall permit producers to repay price support loans for any of the 1993 through 1995 crops of wheat and feed grains at the levels provided under sections 107B(a)(4) and 105B(a)(4)." The word "shall" transforms the permissive language of the 1990 Act into a duty of the Secretary.

On this issue, we note that even if the United States does "enter into" an agreement under GATT by June 30, 1992, section 1302(d)(3) would make the marketing loan provisions mandatory if this GATT agreement "has not entered into force for the United States" by June 30, 1993.

## V.

In sum, we agree with your interpretations of both the Food, Agriculture, Conservation, and Trade Act of 1990 and the Omnibus Budget Reconciliation Act of 1990.

TIMOTHY E. FLANIGAN
*Acting Assistant Attorney General*
*Office of Legal Counsel*