# Whether the Millennium Challenge Corporation Is Subject to the Open Meeting Requirements of the Sunshine Act

The Millennium Challenge Corporation is not an "agency" for purposes of the open meeting requirements of the Sunshine Act.

May 3, 2013

MEMORANDUM OPINION FOR THE
VICE PRESIDENT AND GENERAL COUNSEL
MILLENNIUM CHALLENGE CORPORATION

Section 552b of the Government in the Sunshine Act (the "Sunshine Act" or "Act") provides that, with certain exceptions, "every portion of every meeting of an agency shall be open to public observation." Pub. L. No. 94-409, sec. 3(a), § 552b(b), 90 Stat. 1241, 1241 (1976) (codified at 5 U.S.C. § 552b(b) (2006)).[1] You have asked whether the Millennium Challenge Corporation ("MCC"), a government corporation established "to provide United States assistance for global development," 22 U.S.C. § 7701(1) (2006), is exempt from the open meeting requirements of the Sunshine Act on the ground that it is not an "agency" within the meaning of the Act. Letter for Virginia A. Seitz, Assistant Attorney General, Office of Legal Counsel, from Melvin F. Williams, Jr., Vice President and General Counsel, Millennium Challenge Corporation, *Re: Request for Formal Opinion—Applicability of Sunshine Act to Millennium Challenge Corporation* at 1 (Apr. 9, 2013) ("MCC Letter"). Under the Act, an "agency" is "any agency, as defined in [5 U.S.C. § 552(f)[2]], headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate." 5 U.S.C. § 552b(a)(1). As you acknowledge, all nine members of the MCC Board of Directors are

---

[1] These and the other requirements in section 552b we refer to collectively in this memorandum as the open meeting requirements of the Sunshine Act.

[2] The text of 5 U.S.C. § 552b(a)(1) says "as defined in section 552(e) of this title," but section 552(e) was redesignated section 552(f) by section 1802(b) of Public Law 99-570, 100 Stat. 3207, 3207-49 (1986). *See* 5 U.S.C. § 552b note (2006).

PAS[3] appointees. In your view, however, the MCC should not be considered an "agency" because five of the nine directors are not appointed directly to the Board, but rather serve as members of the Board ex officio. MCC Letter at 6.

We agree that the MCC is not an agency for purposes of the Sunshine Act. Our longstanding position has been that an ex officio board member is not "appointed *to such position* by the President with the advice and consent of the Senate" under the Sunshine Act.[4] 5 U.S.C. § 552b(a)(1) (emphasis added). Although an argument could be made that an ex officio board member is appointed "to such position" when he is appointed to the underlying position, we have thought that the more natural reading of the statute requires a direct PAS appointment to a board or other "collegial body." Here, under 22 U.S.C. § 7703(c)(3) (2006), five of the nine directors are members of the Board by virtue of their appointments to other federal offices: the Secretary of State (appointed PAS pursuant

---

[3] We use the shorthand "PAS" to refer to positions appointed by the President with the advice and consent of the Senate.

[4] *See, e.g.*, Letter for Harold D. Kessler, Acting Executive Director, Federal Labor Relations Council, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel at 2 (Oct. 27, 1976) ("Ulman Letter") ("Each of the three members of the [Federal Labor Relations] Council was appointed to his basic position by the President with the advice and consent of the Senate. . . . However, membership on the Council is an ex officio responsibility; and with respect to such membership, there is no 'appointment' subject to the advice and consent of the Senate. It follows that the Council is not an 'agency' within the meaning of 5 U.S.C.A. 552b(a)(1)."); Letter for Henry Rose, General Counsel, Pension Benefit Guaranty Corporation, from Mary C. Lawton, Deputy Assistant Attorney General, Office of Legal Counsel at 2 (Dec. 28, 1976) ("The [Pension Benefit Guaranty Corporation] Board of Directors is made up of the Secretary of the Treasury, the Secretary of Labor and the Secretary of Commerce. . . . Each of those officials is appointed to his basic position by the President subject to confirmation by the Senate. However, membership on the Board of Directors is an ex officio responsibility, and with respect to such membership, there is not the requisite form of appointment."); Letter for Henry L. Judy, Vice President and General Counsel, Federal Home Loan Mortgage Corporation, from Mary C. Lawton, Deputy Assistant Attorney General, Office of Legal Counsel at 1 (Feb. 15, 1977) ("Our office has considered application of the Sunshine Act to certain bodies composed of the heads of several separate agencies, i.e. persons appointed to their basic position by the President with Senate confirmation, but serving ex officio on the body in question. Regarding these bodies, we relied upon the 'appointed to such position' element of the Sunshine Act's definition and concluded that the ex officio bodies were not covered.").

to 22 U.S.C. § 2651a(a)(2) (2006)); the Secretary of the Treasury (PAS, 31 U.S.C. § 301(b) (2006)); the United States Trade Representative (PAS, 19 U.S.C. § 2171(b)(1) (2006)); the Administrator of the United States Agency for International Development (PAS, 22 U.S.C. §§ 2384(a), 6592 (2006)); and the Chief Executive Officer ("CEO") of the MCC (PAS, 22 U.S.C. § 7703(b)(2)(A)). The President appoints the remaining four members, with the advice and consent of the Senate, directly to the Board. 22 U.S.C. § 7703(c)(3)(B). Accordingly, a majority of the MCC directors have not been appointed "to such position[s]" by the President with the advice and consent of the Senate.

This interpretation is supported by the one published court of appeals decision on the subject, *Symons v. Chrysler Corporation Loan Guarantee Board*, 670 F.2d 238 (1981). In that case, the D.C. Circuit held that a government corporation with all five board members designated ex officio was not an "agency" under the Sunshine Act, notwithstanding the board members' PAS appointment to their respective underlying positions. The court concluded in *Symons* that the plain meaning of the phrase "appointed *to such position*" (emphasis added) excluded ex officio designees. *Id.* at 245. The court found no warrant in the legislative history to read the phrase "to such position" out of the statute; to the contrary, it noted that Congresswoman Bella Abzug, one of the sponsors of the Sunshine Act, had testified that "agencies whose members serve in an ex officio capacity would not be subject to the Sunshine Act." *Id.* at 242.[5] The court also cited advice given by this Office to the Federal Labor Relations Council, in which we stated that the Council was not an "agency" subject to the Sunshine Act, because all three of its members serve in that position ex officio. *Id.* at 243 & n.7 (citing Ulman Letter, *supra* note 4, at 2). Finally, the court noted that one agency had concluded in regulations implement-

---

[5] Specifically, Congresswoman Abzug testified that the National Security Council would not be covered by the Sunshine Act because its members are "not appointed to that position by the President"; rather, "they are appointed to other positions and . . . are ex officio members" of the Council. *Government in the Sunshine: Hearings on H.R. 11656 Before the Subcomm. on Admin. Law & Governmental Relations of the H. Comm. on the Judiciary*, 94th Cong. 16 (1976).

ing the Sunshine Act that it was not covered by the Act because a majority of its board members occupied their positions ex officio. *Id.*[6]

One member of the panel in *Symons* dissented, pointing out that the phrase "to such position" could be read to refer to any position in which an individual will serve ex officio by virtue of an appointment, since at the time of appointment he would automatically assume the ex officio position as well. 670 F.2d at 246–47 (Wald, J., dissenting). Before *Symons*, the Comptroller General endorsed this same interpretation in determining that Amtrak, as then constituted, was an "agency" for purposes of the Sunshine Act. *See Printing by Government Printing Office for National Railroad Passenger Corporation*, 57 Comp. Gen. 773, 774–76 (1978). As the *Symons* majority held, however, this reading would render the phrase "to such position" "mere surplusage," "violat[ing] a fundamental rule of statutory interpretation—that in construing statutes courts should give effect, if possible, to every word used by Congress." 670 F.2d at 241–42 (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). It is also worth noting that the committee reports on the Sunshine Act con-

---

[6] This agency was the Federal Open Market Committee ("FOMC") within the Federal Reserve Board. 42 Fed Reg. 13,300, 13,300 (Mar. 10, 1977) (codified at 12 C.F.R. § 281.2 (1978)) ("The FOMC's membership is composed of the seven members of the Board of Governors [of the Federal Reserve System] and five representatives of the Federal Reserve Banks who are selected annually in accordance with the procedures set forth in Section 12A of the Federal Reserve Act, 12 U.S.C. § 263(a). Members of the Board of Governors serve in an ex officio capacity on the FOMC by reason of their appointment as Members of the Board of Governors, not as a result of an appointment 'to such position' (the FOMC) by the President. Representatives of the Reserve Banks serve on the FOMC not as a result of an appointment 'to such position' by the President, but rather by virtue of their positions with the Reserve Banks and their selection pursuant to Section 12A of the Federal Reserve Act. It is clear therefore that the FOMC does not fall within the scope of an 'agency' or 'subdivision' as defined in the Sunshine Act and consequently is not subject to the provisions of the Act.").

A second agency, a review board within the Department of Defense, has also taken this position with respect to the Sunshine Act. DoD Directive 1000.20, 44 Fed. Reg. 11,220, 11,221, 11,223 (Feb. 28, 1979) (indicating that the Department of Defense Civilian/Military Service Review Board is not subject to the open meeting requirements of the Sunshine Act because its members—"one representative each from the Office of the Secretary of Defense and the Departments of the Army, Navy and Air Force, and the Department of Transportation when cases involve groups claiming active Coast Guard service"—might be PAS in their underlying positions but would not be appointed in that manner to the Review Board).

tained lists of agencies that were expected to be covered by the definition in the Act. Those lists, prepared in consultation with the Department of Justice, did not appear to include any agency that had a majority of its members designated ex officio. *See* H.R. Rep. No. 94-880, pt. 2, at 13–14 (1976); S. Rep. No. 94-354, at 15–16 (1975).

We have adhered to the interpretation adopted by the D.C. Circuit in *Symons* ever since the Sunshine Act was enacted. *See supra* note 4. *Symons* remains good law, and we are aware of no subsequent contrary authority. Following *Symons* and our prior advice, we conclude that the ex officio members of the MCC Board of Directors are not "appointed to such position" by the President with the advice and consent of the Senate and that the MCC therefore should not be considered an "agency" subject to the open meeting requirements of the Sunshine Act.

In reaching this conclusion, we have considered specifically whether the MCC should be distinguished from the entities considered by our prior advice, either because all of the directors who are appointed directly to the Board receive their appointment by the President, with the advice and consent of the Senate, or because the four private sector directors together with the CEO of the MCC constitute a majority of the Board. Neither of these features persuades us to reach a different conclusion. First, we believe that all members of the Board, including ex officio members, must be included when assessing whether a majority of the Board has been appointed "to such position" directly by the President, with the advice and consent of the Senate. As the Sunshine Act states, to be subject to the open meeting requirements of the Act, an agency must be "headed by a collegial body composed of two or more individual members, a majority *of whom* are appointed to such position by the President with the advice and consent of the Senate." 5 U.S.C. § 552b(a)(1) (emphasis added). "[W]hom" refers to the entirety of the collegial body. Thus, a majority of the members of the collegial body that heads the agency—and not just a majority of the members of the collegial body left over after the ex officio members are subtracted—must be PAS appointees. It does not matter here that a majority of the non-ex officio members (all four) of the MCC Board are PAS appointees. The denominator in the equation is the nine members of the Board as a whole, of whom only four are PAS appointees.

Second, we believe that the CEO of the MCC is properly regarded as one of these ex officio members, because by statute the CEO is appointed to a separate office and serves on the Board by virtue of that separate office. The MCC statute declares in one subparagraph (22 U.S.C. § 7703(b)(2)(A)) that "the Chief Executive Officer shall be appointed by the President, by and with the advice and consent of the Senate" and then declares in a separate subparagraph (*id.* § 7703(c)(3)(A)) that "[t]he Board shall consist of . . . the Secretary of State, the Secretary of the Treasury, the Administrator of the United States Agency for International Development, the Chief Executive Officer of the Corporation, and the United States Trade Representative." That the office of the CEO is distinct from the Board is underscored by the fact that the CEO "shall report to and be under the direct authority of the Board." *Id.* § 7703(b)(3).

For all these reasons, we agree with you that the MCC should not be considered an "agency" subject to the open meeting requirements of the Sunshine Act.

VIRGINIA A. SEITZ
*Assistant Attorney General*
*Office of Legal Counsel*
